Filed 12/21/09          NO. 4-08-0974

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JOHN BEHL, d/b/a BEHL CONSTRUCTION, | ) | Appeal from |
|      Plaintiff-Appellee and | ) | Circuit Court of |
|      Cross-Appellant, | ) | Coles County |
|      v. | ) | No. 07LM258 |
| DARYL GINGERICH, | ) | |
|      Defendant-Appellant and | ) | Honorable |
|      Cross-Appellee. | ) | Brien O'Brien, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, John Behl, d/b/a Behl Construction, filed a complaint against defendant, Daryl Gingerich, alleging defendant had failed to pay plaintiff $15,500 for labor and materials plaintiff had provided under a construction contract to remodel defendant's home. Defendant filed a motion to dismiss, claiming plaintiff was precluded from recovering any amounts from him because plaintiff had violated the Home Repair and Remodeling Act (Act) (815 ILCS 513/1 through 999 (West 2006)). The trial court denied defendant's motion, and the case proceeded to a bench trial.

After trial, the trial court found in plaintiff's favor and awarded him $9,594.03 in damages. Defendant appealed, arguing that plaintiff could not enforce the contract due to the specific requirements of the Act or, in the alternative, if the contract was enforceable, the court erred in calculating the judgment amount. Plaintiff filed a cross-appeal, also arguing that the court erred in its calculation of damages on different grounds. Plaintiff also claimed the court erred in finding that his mechanic's lien was

unenforceable as untimely.  We affirm in part, reverse in part, and remand for further proceedings.

## I.  BACKGROUND

In August 2006, plaintiff built a room addition, added an attached garage with a half bathroom, and performed repair work on an existing porch at defendant's home.  The "bid price" for this work was $55,395.  Prior to starting the job, plaintiff provided defendant with a written work order.  Plaintiff performed the majority of the work, and in April 2007, he left the job because he believed his relations with defendant were deteriorating.

In August 2007, plaintiff filed a complaint for damages, seeking $20,821.93 as the balance due.  According to plaintiff, defendant had paid $39,895 of the $55,395 total.  He allowed defendant a credit in the amount of $3,296.07, leaving a balance due of $12,203.93.  Plaintiff also alleged he had performed additional work in the amount of $8,618.  Defendant filed a motion to dismiss plaintiff's complaint, claiming plaintiff had failed to attach any written agreement between the parties.  The trial court dismissed the complaint without prejudice.

In October 2007, plaintiff filed his first amended complaint, alleging breach of contract (count I) and foreclosure of a mechanic's lien (count II).  Defendant filed another motion to dismiss, claiming the "agreement" then attached to the amended complaint did not satisfy the requirements of the Act (815 ILCS 513/1 through 999 (2006)) because defendant had not signed a written agreement authorizing the work.  Defendant also filed a counterclaim asking the trial court to vacate and release the

mechanic's lien filed by plaintiff.

In January 2008, the trial court granted defendant's motion to dismiss, finding the "allegations as they currently stand do not give rise to causes of action that would survive an affirmative defense raising the [Act]." The court allowed plaintiff 21 days to replead.

Plaintiff timely filed a second amended complaint, alleging breach of contract (count I), foreclosure of the mechanic's lien (count II), and promissory estoppel (count III). Defendant filed a motion to dismiss, renewing his arguments as they relate to the Act and claiming plaintiff was precluded from recovery under any equitable theory when he violated Illinois law. After considering counsels' arguments, the trial court denied defendant's motion, finding:

"It seems to me that based upon the allegations in the pleading that there are issues of material fact that should require this case to go forward. That doesn't mean the [p]laintiff's going to win at trial. I'm going to have to hear all of the evidence but I am troubled and--and I've made this pretty clear to both of you about the issue of the periodic payments being authorized. Perhaps it is significant that [defendant] initiated the contact rather than [plaintiff] doing so. Perhaps it is significant that [defendant] while the pro-ject was in the process of going on that he ask[ed] [plaintiff] to do even more work. These are all facts pled in this case

- 3 -

that are absent from the three reported appellate court decisions. And so I'm going to err on the side of caution here and rather [than] dismiss the case on the pleadings, I'm going to allow it to go forward to an evidentiary hearing. Perhaps some day I'll be enlightened by the [a]ppellate [c]ourt, as will all trial judges in the State, so we all know whether there can ever be an exception to the application of this Act."

Defendant filed his answer to the second amended complaint, raising the following affirmative defenses: (1) plaintiff failed to complete the work and defendant was forced to hire another contractor to finish the project and (2) plaintiff violated the Act by failing to secure a written and signed contract before beginning construction.

On October 16 and 17, 2008, the trial court conducted a bench trial. Prior to the presentation of evidence, upon plaintiff's request, the court took judicial notice of the following admissions of defendant: (1) in or prior to August 2006, before construction began, plaintiff provided defendant with a written work order that contained the scope and cost ($55,395) of the proposed construction work and (2) during the construction project, plaintiff went with defendant to defendant's bank for the purpose of receiving partial payments and signing lien waivers.

Defendant was first to testify as plaintiff's adverse witness. He testified that during the summer of 2006, he approached plaintiff about performing construction work on his home. Defendant, a plumbing contractor, had worked with plaintiff and

was confident in the quality of his work. Defendant wanted plaintiff to build a garage, remodel the interior of the home, and work on the existing porch. Defendant and his fiancée (now his wife), Roberta Kennedy, met with plaintiff at their home to discuss the project. Plaintiff initially submitted a written bid for $80,000. Defendant and plaintiff discussed a different plan to reduce the cost. Plaintiff then resubmitted a written bid for $55,395, the document attached to plaintiff's complaint and identified as exhibit A at trial. Defendant agreed to allow plaintiff to do the specified work for this amount. Plaintiff estimated the job would be completed in three months.

During the course of the construction, plaintiff accompanied defendant to the bank four times for partial draws and execution of lien waivers. Defendant and Kennedy resided in the home during construction. "At some point in time," plaintiff provided defendant with another invoice, a document identified as exhibit B, reflecting a balance due of $12,477.37. Defendant said he refused to pay that amount. The second document attached to plaintiff's complaint, identified as exhibit C at trial, which indicated an amount due for "additional work" of $8,618, was not provided to defendant by plaintiff but by plaintiff's attorney after the lawsuit was filed. Defendant refused to pay that amount as well.

Defendant testified that he created a three-page punch list, identified as exhibit D, listing the items that remained unfinished and setting a deadline for completion of April 24, 2006. He gave this document to plaintiff, who completed "a few things" on the list before the deadline.

Plaintiff was the next to testify. He said he knew defendant from working

in the construction business and employed him in the past as his plumbing subcontractor. In the summer of 2006, defendant approached him about a remodeling project on his home. Plaintiff said he and defendant discussed the project "[q]uite a bit." Defendant agreed to pay plaintiff $55,395 for the work set forth in the document identified as exhibit A. Plaintiff gave defendant a copy of the document before starting the project.

Plaintiff said defendant paid him four installments and did not object to any of the work. Kennedy was "there most of the time," and if she was not satisfied with something, she would discuss it with plaintiff. On occasion, she would give instructions on how she wanted things done, which sometimes included items that were not within the original scope of work. Plaintiff said he tried to please her because he considered defendant a friend, which, he explained, was "probably one reason why [there was] no signature." He said Kennedy seemed to be unhappy "with a lot of things." Plaintiff realized the situation was getting difficult when he received defendant's punch list. Many of the items on the punch list were items that were not included in exhibit A (the written work order).

Plaintiff was tendered a document, identified as exhibit G, which was a copy of the punch list (exhibit D) with his notations as to which items were part of the original bid and which were not. According to plaintiff, 36 of the 67 items listed were not contemplated in the bid. Plaintiff said he began working on the items on the punch list that were included in the bid but stopped when he realized he was not going to get paid. He said defendant still complained after plaintiff had completed some of the items. According to plaintiff, the "additional work" listed on exhibit C, which consisted

of work outside of the bid amount and totaled $8,618, were items requested by defendant and completed by plaintiff. Plaintiff testified that defendant owed him $12,477.37, as set forth in exhibit B, plus $8,618, as set forth in exhibit C. Plaintiff demanded the amount due, but defendant refused to pay. As a result of defendant's refusal, plaintiff filed and recorded a mechanic's lien on the property (exhibit E). Plaintiff said defendant never asked him to leave the job; he left voluntarily.

On cross-examination, plaintiff admitted not providing defendant with the consumer-rights brochure as required by the Act. In fact, he said, he did not know anything about the Act or the brochure until consulting with an attorney about filing his lawsuit. Plaintiff could not recall the date he began work but believed his last day was no later than April 24, 2007. Plaintiff rested.

The trial resumed the next day. First to testify for defendant was Lewis Schrock, a local contractor who had completed most of the items on the punch list for defendant. Defendant had paid him $3,285.89 on December 5, 2007, and $5,242.90 on February 29, 2008, to correct the work or complete the things not done by plaintiff. Schrock said he typically would get a signed written agreement before doing any work for customers but, since he knew defendant, he did not. He was not familiar with the brochure identified in the Act. Defendant paid Schrock in full despite the absence of a signed written agreement and without receiving the brochure.

Roberta Gingerich, f/k/a Roberta Kennedy, recalled giving plaintiff the punch list on April 10, 2007. Plaintiff told her he would take care of the items on the list. Gingerich described, in detail, those items she felt plaintiff either did in an

unworkmanlike manner or failed to do. She also described the work Schrock did to correct the problems.

Defendant described his understanding of the scope of the work contemplated in his agreement with plaintiff, the quality and quantity of the work performed by plaintiff, and the work performed by Schrock.

In rebuttal, plaintiff testified as to the quality of his work. In his opinion, he performed each individual job in a workmanlike manner and the work completed by Schrock was outside the scope of the original agreement.

The parties submitted written closing arguments, and on November 21, 2008, the trial court entered a detailed judgment, awarding plaintiff $9,594.03 plus costs. The court found plaintiff had substantially complied with the Act by providing defendant with a written bid and work order after extensive discussions and negotiations regarding the construction project. Of the $55,395 contract price, defendant had paid $39,895, leaving a balance due of $15,500. The court found plaintiff was not entitled to recover any of the $8,618 amount billed for "additional work" as he had not provided defendant with a written work order or invoice for this amount prior to filing his lawsuit. The parties had not negotiated the cost or scope of this "additional work."

The trial court further found defendant was entitled to a credit in the amount of $3,628.97 for materials, in the form of flooring, doors, and lock sets, that he had provided plaintiff during the project. In addition, defendant was entitled to an offset in the amount of $2,277 for the amount paid to Schrock. Defendant had requested an offset in the amount of $8,528.79 as the total amount he paid Schrock to

complete or correct plaintiff's work. However, the court found that because Schrock had initially offered to complete the items on the punch list for $4,950, that was the maximum amount of offset to be awarded. Because only 31 of the 67 items (or 46%) on the punch list were part of the original agreement between plaintiff and defendant, defendant was entitled to an offset for the costs associated with those 31 items only. The court awarded defendant an offset in the amount of $2,277, or 46% of $4,950.

Finally, the trial court found the mechanic's lien plaintiff had filed on August 30, 2007, was untimely and could not proceed to a foreclosure action. The court cited section 7 of the Mechanics Lien Act (770 ILCS 60/7 (West 2006)) and found plaintiff filed the lien more than four months after he completed the work on April 24, 2007. This appeal and cross-appeal followed.

## II. ANALYSIS

In defendant's appeal, he claims the trial court erred in awarding plaintiff monetary damages in light of plaintiff's violations of the Act. Defendant insists that plaintiff committed "unlawful acts" by failing to (1) secure a signed contract and (2) provide defendant with a consumer-rights brochure. These failures, defendant claims, are fatal to plaintiff's action for recovery of any amount due for the construction work. Defendant argues that, in effect, the court's judgment has created certain exceptions to strict compliance with the Act and placed the burden of obtaining a signed contract and receipt of the brochure upon the consumer.

Plaintiff cross-appeals, claiming the trial court erred in precluding his recovery for the "additional work." He also claims the court erred in denying relief

under the Mechanics Lien Act.

## A. Recovery Under the Act

The issue in this case is whether plaintiff is precluded from recovering the amount he claims is due from defendant when there was no signed contract and no delivery by him of the consumer-rights brochure to defendant. The trial court denied defendant's motion to dismiss plaintiff's complaint and allowed plaintiff to recover despite noncompliance with all the requirements of the Act. Defendant argues the court's decision was error. We disagree.

The Act requires that for any repair or remodeling work over $1,000, "a person engaged in the business of home repair or remodeling shall furnish to the customer for signature a written contract or work order." 815 ILCS 513/15 (West 2006). This contract or work order must meet certain disclosure requirements, including cost and the name and address of the construction company (815 ILCS 513/15 (West 2006)). The Act also requires that "any person engaging in the business of home repair and remodeling shall provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract"; the text of this brochure appears in the statute itself. 815 ILCS 513/20 (West 2006). The Act specifies that it is "unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs *** before obtaining a signed contract or work order [when the amount of the work is] over $1,000." 815 ILCS 513/30 (West 2006).

The parties do not dispute that the Act applies to the facts of this case.

- 10 -

Nor do they dispute that (1) defendant did not sign the work order and (2) plaintiff did not provide defendant with the brochure. Given these facts, the issue is whether plaintiff substantially complied with the Act so as to allow him recovery from defendant. Whether there is substantial compliance with a statutory provision is a question of law, and our standard of review is de novo. Mashni Corp. v. Board of Election Commissioners, 362 Ill. App. 3d 730, 739, 841 N.E.2d 60, 68 (2005).

The two statutory sections pertinent in this case use the word "shall" when describing the contractor's duties. First, in section 15, the statute states that the contractor "shall furnish to the customer for signature a written contract or work order." 815 ILCS 513/15 (West 2006). Then, in section 20, the legislature proscribed that the contractor "shall provide to its customers a copy of" the brochure. 815 ILCS 513/20 (West 2006). Typically, use of the word "shall" in a statutory provision indicates that the legislature intended a mandatory, rather than a directory, provision. However, a mandatory provision does not always require strict compliance. "Substantial compliance can satisfy even a mandatory provision." Jakstas v. Koske, 352 Ill. App. 3d 861, 864, 817 N.E.2d 200, 203 (2004).

Therefore, the question before us is whether substantial, rather than strict, compliance with a mandatory statutory requirement in this case is permissible and, if so, whether plaintiff demonstrated such compliance. To answer this question, we conduct a twofold analysis. First, we look to the purpose of the Act to determine whether the purpose was achieved without strict compliance. Next, we decide whether defendant suffered any prejudice from plaintiff's failure to strictly comply with the Act.

See Jones v. Industrial Comm'n, 188 Ill. 2d 314, 324-26, 721 N.E.2d 563, 568-69 (1999) (the court found the petitioner had substantially complied with the requirements of the Workers' Compensation Act to adequately fulfill the purpose of the statute and the respondent was not prejudiced by the petitioner's actions).

To ascertain the purpose of the Act, we look to the statutory language used therein and give the words their plain and ordinary meaning. MD Electrical Contractors, Inc. v. Abrams, 228 Ill. 2d 281, 287, 888 N.E.2d 54, 58 (2008). "[I]t is not sufficient to read a portion of the statute in isolation. We must, instead, read the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." MD Electrical Contractors, 228 Ill. 2d at 287, 888 N.E.2d at 58.

The Act went into effect on January 1, 2000. Its purpose was to improve communication between consumers and persons engaged in the business of home repairs or remodeling in order to "increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in [the repair and remodeling] business in this State." 815 ILCS 513/5 (West 2006). As a means of achieving this goal, the legislature enacted section 15, the section referenced above requiring that the contractor, prior to initiating repair or remodeling work over $1,000, "shall furnish to the customer for signature a written contract or work order that states the total cost, including parts and materials listed with reasonable particularity and any charge for an estimate. In addition, the contract shall state the business name and address of the person engaged in the business of home repair or remodeling." 815 ILCS 513/15 (West 2006). The contractor must also provide the customer with a copy of the pamphlet:

- 12 -

"Home Repair: Know Your Consumer Rights" prior to the execution of any contract. 815 ILCS 513/20 (West 2006). Further, the Act provides that it is "unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs *** before obtaining a signed contract or work order [for] over $1,000." 815 ILCS 513/30 (West 2006).

It is clear from these statutory sections that the legislature intended to protect unsuspecting homeowners from employing deceptive contractors or dishonest individuals posing as contractors. However, the Act, as written, not only protects those homeowners considered "prey" but also promotes good business practices by requiring that the scope of the project be reduced to writing. As Justice Wolfson said: "[T]here is something to be said for predictability of cost and consumer expectation." K. Miller Construction Co. v. McGinnis, 394 Ill. App. 3d 248, 268, 913 N.E.2d 1147, 1163 (2009) (Wolfson, J., dissenting). That is, not only has the legislature sought to protect the unwary consumer, it has codified a sound business practice for the protection of both the honest contractor and the informed consumer. "[T]he Act appears designed to help define some reasonable boundaries for a home[-]improvement project." Central Illinois Electrical Services, L.L.C. v. Slepian, 358 Ill. App. 3d 545, 549, 831 N.E.2d 1169, 1173 (2005).

For further guidance in interpreting the Act, we look to our common law. Six Illinois published appellate opinions apply, interpret, analyze, and discuss the provisions of the Act. See MD Electrical Contractors, 228 Ill. 2d at 286-96, 888 N.E.2d at 58-63; Slepian, 358 Ill. App. 3d at 548-51, 831 N.E.2d at 1172-74 (Third District);

Smith v. Bogard, 377 Ill. App. 3d 842, 844-48, 879 N.E.2d 543, 545-48 (2007) (Fourth District); Kunkel v. P.K. Dependable Construction, LLC, 387 Ill. App. 3d 1153, 1157-61, 902 N.E.2d 769, 774-77 (2009) (Fifth District); K. Miller Construction, 394 Ill. App. 3d at 255-65, 913 N.E.2d at 1152-61 (First District); Artisan Design Build, Inc. v. Bilstrom, No. 2-08-0855, slip op. at 5-18 (September 22, 2009), ____ Ill. App. 3d ____, ____, ____ N.E.2d ____, ____ (Second District). Not one of these published opinions addresses the issue currently before this court: whether a written, unsigned work order substantially satisfies the requirements of the Act. We will discuss those reported decisions in chronological order to establish the framework thus far of the courts' application of the Act.

First, in Slepian, the Third District held that the Act applied to a successor electrical contractor despite the contractor's urging that it did not "initiate" the construction project for the homeowners as required by section 15 of the Act (815 ILCS 513/15 (West 2006)). The court reversed the trial court's decision that the Act did not apply and remanded for further proceedings, noting that the contractor had failed to provide the homeowners with "a written work order of reasonable particularity" as required by section 15. Slepian, 358 Ill. App. 3d at 549, 831 N.E.2d at 1172-73.

Next, in Smith, this court held that the contractor's failure to provide a written contract or work order and the consumer-rights brochure prior to beginning construction defeated his legal and equitable claims for recovery. Smith, 377 Ill. App. 3d at 848, 879 N.E.2d at 548. The contractor had proceeded with construction after providing the homeowners only with an oral estimate of "$20,000 or less" as the cost

for labor and materials. <u>Smith</u>, 377 Ill. App. 3d at 843, 879 N.E.2d at 545. We held that the contractor's failure to comply with several provisions of the Act precluded his breach-of-contract and <u>quantum</u>-<u>meruit</u> claims. <u>Smith</u>, 377 Ill. App. 3d at 848, 879 N.E.2d at 548.

In <u>MD Electrical Contractors</u>, the supreme court affirmed the Second District's decision and held that "it is clear that the statute unambiguously applies only to those who directly contract with a homeowner," which, in that case did not include the plaintiff subcontractor. <u>MD Electrical Contractors</u>, 228 Ill. 2d at 291, 888 N.E.2d at 60. The court did not reach the issue of whether the subcontractor was able to recover under the equitable theory of <u>quantum meruit</u>, as the court deemed that issue forfeited. <u>MD Electrical Contractors</u>, 228 Ill. 2d at 299-300, 888 N.E.2d at 65.

Next, the Fifth District held that the consumer could have a cause of action under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 through 12 (West 2002)) when the contractor failed to provide the consumer-rights brochure, as required by section 20 of the Act (815 ILCS 513/20 (West 2002)), if the consumer could prove that the failure to provide the brochure was a proximate cause of his or her damages. <u>Kunkel</u>, 387 Ill. App. 3d at 1160, 902 N.E.2d at 776.

The First District rejected this court's decision in <u>Smith</u> and held that the contractor's violations of the Act did not preclude his recovery in <u>quantum meruit</u>. <u>K. Miller Construction</u>, 394 Ill. App. 3d at 254-55, 913 N.E.2d at 1150. The court considered the parties' oral agreement for remodeling work on the consumers' home and found that such an agreement was not enforceable under the Act due to the Act's writing

- 15 -

requirement. K. Miller Construction, 394 Ill. App. 3d at 252, 913 N.E.2d at 1152. However, the court concluded that the writing requirement of the Act did not foreclose an equitable theory of recovery between, in that particular case, an honest contractor and a "sophisticated" consumer. K. Miller Construction, 394 Ill. App. 3d at 250, 913 N.E.2d at 1149-50.

Finally, the Second District considered whether a contractor's failure to provide the homeowners with the consumer-rights brochure in violation of section 20 of the Act (815 ILCS 513/20 (West 2006)) forfeited his legal and equitable causes of action. Artisan Design, slip op. at 13, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. The parties had entered into a written and signed contract for the remodeling of the defendants' home. Artisan Design, slip op. at 2, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. The defendants locked the plaintiff out of the project and hired another contractor to finish the work when a portion of the contract price remained unpaid. Artisan Design, slip op. at 2, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. The homeowners moved to dismiss the contractor's lawsuit against them, claiming he was precluded from recovery due to his failure to provide them with the consumer-rights brochure. Artisan Design, slip op. at 2, ___ Ill. App. 3d at ___, ___ N.E.2d at ___. The court concluded that a contractor's failure to provide the brochure may provide a homeowner with a cause of action under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 through 12 (West 2006)) but does not "vitiate the contractor's right to recover either in equity or in law." Artisan Design, slip op. at 15, ___ Ill. App. 3d at ___, ___ N.E.2d at ___.

The question presented in the case <u>sub judice</u> has not been answered by the appellate or supreme court: whether a written but unsigned work order, tendered by the contractor to the homeowner, substantially complied with the intent of the Act so as to allow the contractor to pursue recovery of any outstanding amount he claims due. We find that, in this case, plaintiff substantially complied with the Act and the trial court did not err in denying defendant's motion to dismiss.

The testimony at trial revealed that defendant contacted plaintiff about remodeling his home. The two had worked together on construction jobs in the past. They met to discuss the scope of the project, and after their discussion, plaintiff submitted to defendant a written bid for $80,000. Defendant rejected that bid, and the two parties reworked the scope of the project. Prior to initiating the work, plaintiff submitted to defendant a written work order in the amount of $55,395. This work order contained (1) plaintiff's name, address, and telephone number; (2) defendant's name, address, and telephone number; (3) a somewhat detailed description of the project, including a list of specifications and materials; (4) the cost of each individual job as well as the total cost; and (5) a note that defendant would provide the electrical, plumbing, heating, and concrete materials and labor.

Our decision that plaintiff substantially complied with the Act rests primarily on the fact that there existed a writing between the parties and evidence that each party had accepted the writing as their contract. Each side knew the cost and scope of the entire project based on that written work order. Unlike the parties in <u>K. Miller Construction</u>, <u>Smith</u>, and <u>Slepian</u>, the contractor and homeowner in this case had

negotiated the scope and cost of the project and reduced it to writing. In each of the previous decisions, the respective court has held that the Act unambiguously bars enforcement of an oral contract. See K. Miller Construction, 394 Ill. App. 3d at 254, 913 N.E.2d at 1152; Smith, 377 Ill. App. 3d at 845, 879 N.E.2d at 546; Slepian, 358 Ill. App. 3d at 549, 831 N.E.2d at 1172. As the supreme court stated in MD Electrical Contractors, the Act "was designed to regulate the communications between contractors and the consumer/homeowner." MD Electrical Contractors, 228 Ill. 2d at 289, 888 N.E.2d at 59. The best evidence of those "communications" is a written document, rather than each person's interpretation of verbal communications.

Defendant approached plaintiff about performing the work. This is significant in terms of the purpose of the Act because the legislature intended to protect homeowners from being approached by dishonest individuals who hoped to deceive the unwary.

> "According to the floor debates, the Act was designed to deal
> with contractors that 'prey on seniors [and] homeowners
> after disasters' (91st Ill. Gen. Assem., House Proceedings,
> May 20, 1999, at 17 (statements of Representative Fritchey)),
> and those who 'simply go up and down the street looking for
> the elderly, [and] looking for the unprotected, looking for the
> uninformed' (91st Ill. Gen. Assem., House Proceedings, May
> 20, 1999, at 20 (statements of Representative Winters))." K.
> Miller Construction, 394 Ill. App. 3d at 263, 913 N.E.2d at

1159.

In this case, plaintiff and defendant, both engaged in the construction trades, negotiated the scope and cost of the project until they finally reached an agreement as to what the project would entail. Before beginning construction, plaintiff tendered to defendant a written work order that represented their final agreement. Defendant did not dispute the contents of that work order, and plaintiff began construction. Throughout the course of the project, defendant paid plaintiff several draws. The fact that their relationship soured had nothing to do with plaintiff's failure to secure defendant's signature on a construction contract.

Nor can defendant argue that he suffered any prejudice by plaintiff's failure to strictly comply with the provisions of the Act, including plaintiff's failure to provide him with the consumer-rights brochure. As the court held in Artisan, the brochure merely instructs the homeowner to contact the State's Attorney or the Attorney General if he feels he has been defrauded by a contractor. Artisan, slip op. at 14, ____ Ill. App. 3d at ____, ____ N.E.2d at ____. Because defendant (1) negotiated the scope and cost of the project, (2) accepted the written work order provided by plaintiff before plaintiff began the construction project, and (3) paid plaintiff in several installments during the course of the project, he cannot reasonably argue that he suffered prejudice or that he had been defrauded by plaintiff. Defendant may have been dissatisfied with plaintiff's quality of work and found it necessary to hire Schrock to remedy some of his complaints. However, defendant did not contend that he hired Schrock because plaintiff had engaged in deceptive practices. Under these facts,

defendant cannot demonstrate that plaintiff's failure to secure his signature on the work order or plaintiff's failure to provide him with the consumer-rights brochure proximately caused him damages. See Artisan, slip op. at 12, ___ Ill. App. 3d at ___, ___ N.E.2d at ___; Kunkel, 387 Ill. App. 3d at 1160, 902 N.E.2d at 776.

In sum, based on the record before us, we find plaintiff substantially complied with the provisions and purpose of the Act by negotiating with defendant regarding the scope of the work and cost and by presenting defendant with a written work order, which contained the details of the project with "reasonable particularity" and included plaintiff's business name and address as required by section 15 of the Act (815 ILCS 513/15 (West 2006)). We further find defendant was not prejudiced by plaintiff's failure to strictly comply with every provision of the Act. Thus, we hold the trial court did not err in denying defendant's motion to dismiss.

B. Calculation of Damages

Defendant next contends that the trial court erred in calculating plaintiff's damages. Specifically, he argues that he was entitled to an amount greater than the $2,277 awarded as credit for the amounts he paid to Schrock. On the other hand, plaintiff contends the court's calculation of the offset amount was proper; however, in his cross-appeal, he contends he is entitled to damages for the "additional work" that he completed. Because we find the court erred in its calculation of the offset amount, we reverse the award of damages and remand for the court to recalculate the proper amount to be credited to defendant. We affirm the award of damages in all other respects.

"Under the doctrine of substantial performance, the general rule regarding building contracts is that a builder is not required to perform perfectly but, rather, is only held to a duty of substantial performance in a workmanlike manner." Howard v. Jay, 203 Ill. App. 3d 539, 544, 561 N.E.2d 274, 278 (1990). The homeowner, who receives substantial performance of the building contract, must pay the price bargained for, less any offset for defects in what he received as compared to what strict performance would have given him. Howard, 203 Ill. App. 3d at 544, 561 N.E.2d at 278. See also Restatement (Second) of Contracts §347, at 112 (1981) (the injured party has a right to damages as measured by the loss in the value to him caused by the other party's breach, plus any incidental or consequential loss, less any cost that he has avoided by not having to perform).

The evidence presented at trial revealed that defendant owed the balance of $15,500 from the original contract price. The trial court found that plaintiff had substantially performed the contract and was due that balance, less the costs of flooring and other items that defendant had paid for in the amount of $2,209.29, leaving a balance due of $13,290.71. Because defendant had hired Schrock to complete items on the punch list that were not completed by plaintiff, defendant was entitled to an offset for those items. Defendant had paid Schrock $8,528.79. However, the court found that much of the work that Schrock performed was not contemplated in the original agreement between plaintiff and defendant. According to plaintiff's testimony, 31 of the 67 items on the punch list (or 46%) were included in the scope of the original agreement. Schrock had initially offered to perform all of the 67 items on the punch list for $4,950.

Beginning with that sum as the maximum amount of offset to which defendant was entitled, the court reduced the amount by 46%. The court ruled defendant was entitled to an offset in the amount of $2,277 for the punch-list items paid to Schrock. We find this calculation to be in error.

The evidence does not support the trial court's apparent assumption that every one of the 31 items on the punch list cost the same to complete in terms of materials and labor. A more accurate offset amount should be calculated. The court should consider additional evidence, if necessary, in order to calculate the amount defendant paid to Schrock for each of the 31 items that Schrock completed, items that plaintiff should have completed as part of the original work order.

With the exception of the trial court's percentage-based calculation, we do not disturb the court's findings. Every other calculation referenced above was supported by the evidence, including the court's finding that plaintiff is precluded from recovering any further amount from defendant for "additional work." No evidence in the record suggests defendant was notified or aware that the original work order had been amended or modified, and therefore, plaintiff is not entitled to any additional amount.

As stated above, the Act prohibits the enforcement of any oral construction or remodeling contract. See 815 ILCS 513/1 through 999 (West 2006). "Nothing in the Act precludes a contractor from providing an updated estimate or work order as the circumstances may warrant." Slepian, 358 Ill. App. 3d at 549, 831 N.E.2d at 1173. Plaintiff did not provide defendant with any written update until the lawsuit was filed,

and therefore, plaintiff is precluded from recovering any amount for "additional work" not contemplated in the original work order.

## C. Mechanic's Lien

In his cross-appeal, plaintiff also contends that the trial court erred in holding that his mechanic's lien was unenforceable because it was not timely filed. He contends that section 7 of the Mechanics Lien Act (770 ILCS 60/7 (West 2006)) refers only to a limitation period relating to the contractor's lien as it relates to other creditors, not relating to the time within which a lawsuit against the homeowner may be filed. We agree with plaintiff, reverse the trial court's judgment, and remand for further proceedings related to the Mechanics Lien Act.

Section 7 provides, in relevant part, as follows:

"No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within [four] months after completion, *** he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of the county *** a claim for lien." 770 ILCS 60/7 (West 2006).

Whereas, section 9 provides, in part:

"If payment shall not be made to the contractor having a lien by virtue of this act ***, then such contractor may bring suit to enforce his lien ***. Such suit shall be com-

menced *** within two years after the completion of the contract ***." 770 ILCS 60/9 (West 2006).

Section 7 requires a contractor to file a suit, or to record a lien claim, within four months after completion of the work so as to give third parties dealing with the property notice of the existence, nature, and character of the lien. The contractor's failure to comply with the four-month limitation period will preclude him from enforcing his lien against any other creditor. In the event the contractor fails to comply with section 7 of the Act, the lien may not be enforceable against such third parties, but may nonetheless be enforced against the original owner pursuant to section 9. The contractor has two years from the completion of the contract to file a lawsuit to enforce his lien. See Apollo Heating & Air Conditioning Corp. v. American National Bank & Trust Co., 135 Ill. App. 3d 976, 979-80, 482 N.E.2d 690, 693 (1985).

We reverse that portion of the trial court's judgment that releases plaintiff's claim for lien and remand for further proceedings pursuant to the Mechanics Lien Act (770 ILCS 60/0.01 through 39 (West 2006)) and count II of plaintiff's second amended complaint.

### III. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the trial court's judgment and remand for further proceedings consistent with our opinion. Specifically, we hold that plaintiff substantially complied with the statutory requirements of the Act and was entitled to enforce his contract with defendant for the remodeling of defendant's home. We further hold that the court erred in its calculation

regarding the amount of credit to which defendant was entitled. In all other respects, the court's calculations and factual findings are affirmed. We reverse the court's finding that defendant was entitled to an offset in the amount of $2,277 for the amounts paid to a third-party contractor and remand for a redetermination of the proper amount consistent with our opinion above. We further hold that the court erred in finding that plaintiff's lien filed pursuant to the Mechanics Lien Act was untimely. We therefore reverse the court's order releasing plaintiff's lien as unenforceable and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded with directions.

KNECHT and POPE, JJ., concur.