THIRD DIVISION
June 30, 2010

No. 1-09-1421

| | | |
|---|---|---|
| UNIVERSAL STRUCTURES, LTD., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| ALAN BUCHMAN, DIANE BUCHMAN, THE NORTHERN TRUST COMPANY, UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) | Honorable Carolyn Quinn, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Universal Structures, Ltd. (Universal), appeals from an order of the circuit court dismissing its complaint against defendants, Dr. Alan Buchman and Diane Buchman, because plaintiff failed to procedurally comply with the Home Repair and Remodeling Act (Act) (815 ILCS 513/20, 30 (West 2008)) and obtain the defendants' signatures on work orders and failed to furnish the defendants with a consumer rights brochure. For the following reasons, we reverse and remand.

BACKGROUND

On July 1, 2008, plaintiff filed a verified complaint for foreclosure of its mechanic's lien

and other relief. In count I of the complaint, plaintiff sought to foreclose its mechanic's lien on defendants' property; count II alleged a breach of contract. The complaint alleged the following facts. Plaintiff is a general contractor with its principal place of business in Northbrook, Illinois. Defendants are a married couple residing in Northfield, Illinois. On or about August 25, 2006, plaintiff entered into a written demolition contract with defendants to remove certain items throughout the defendants' home for the sum of between $125,000 and $150,000.

Plaintiff then submitted numerous work orders to defendants for remodeling services upon completion of those services, totaling $1,339,042.04. Defendants paid plaintiff the sum of $1,234,544.39, leaving an outstanding balance of $104,497.65, which formed the basis for the mechanic's lien recorded by plaintiff against defendants' property on February 1, 2008.

In support of its complaint, plaintiff submitted an affidavit from Michael Hughes, president of Universal. Hughes attested that pursuant to the agreement between Universal and defendants, Universal tendered work orders to the defendants. Defendants could either accept or reject the work order presented to them. Hughes attested that if a work order was accepted by defendants, the defendants would pay a portion of the amount owed prior to Universal commencing the work set forth in the work order. Hughes attested that defendants accepted the work detailed in each work order, including those attached to Universal's verified complaint. Hughes attested that defendants paid all amounts due pursuant to the work orders, except the portions of the work orders attached to Universal's verified complaint.

Hughes attested that Universal did not provide defendants with a copy of the consumer rights brochure referenced in the Act. Hughes further attested that on one occasion during the time that Universal was performing work at the defendants' property, defendants advised Hughes

1-09-1421

that another contractor also performing work at the property had provided defendants with the brochure.

On September 16, 2008, defendants filed a motion to dismiss the verified complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2008)). In the motion to dismiss, defendants alleged that plaintiff's failure to present a written contract or work order to them for signature and plaintiff's failure to provide defendants with the consumer rights brochure were violations of the Act, which precluded plaintiff's recovery under both of its claims.

On October 21, 2008, defendants filed an amended verified complaint seeking an accounting of all funds charged and paid by Universal for the work performed at defendants' property and alleging violations of the Act (815 ILCS 513/1 *et seq.* (West 2008)), violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2008)), common law fraud, unjust enrichment, and negligence.

The circuit court consolidated the cases. Following a hearing on April 22, 2009, the circuit court granted defendants' section 2-619 motion to dismiss Universal's complaint based on Universal's failure to comply with the Act. On May 6, 2009, the circuit court applied Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language to its April 22, 2009 order dismissing plaintiff's verified complaint. Plaintiff now appeals.

ANALYSIS

The issue in this case is whether plaintiff is precluded from asserting a mechanic's lien upon defendants' property and other relief where there was no signed contract or work orders and no delivery by plaintiff of the consumer rights brochure to defendants, as required by sections

1-09-1421

20 and 30 of the Act (815 ILCS 513/20, 30 (West 2008)).

The parties do not dispute that the Act applied to the facts of this case. Nor do they dispute that (1) defendants did not sign the work orders; and (2) plaintiff did not provide defendants with the brochure. In order to decide whether plaintiff's failure to comply with Act bars it from recovering from defendants, we must interpret the Act. Our standard of review is *de novo*. MD Electrical Contractors, Inc. v. Abrams, 228 Ill. 2d 281, 286 (2008). Our goal is to ascertain and give effect to the intent of the legislature. MD Electrical, 228 Ill. 2d at 287. The means of effectuating this goal is to read the statutory language and give the words their plain and ordinary meaning. MD Electrical, 228 Ill. 2d at 287. It is not sufficient to read a portion of the statute in isolation; rather, we must read the statute in its entirety, bearing in mind the subject it addresses and the legislature's apparent objective in enacting it. MD Electrical, 228 Ill. 2d at 287. Where the language is clear and unambiguous, we must apply it as written, without resort to tools of construction. MD Electrical, 228 Ill. 2d at 287-88.

We begin by setting out the pertinent sections of the Act in their entirety. Section 20(a) of the Act states:

"§ 20. Consumer rights brochure. (a) For any contract over $1,000, any person engaging in the business of home repair and remodeling shall provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract. The consumer shall sign and date an acknowledgment form entitled 'Consumer Rights Acknowledgment Form' that states: 'I, the homeowner, have received from the contractor a copy of the pamphlet entitled "Home Repair: Know Your Consumer Rights." ' The contractor or his or her representative shall

also sign and date the acknowledgment form, which includes the name and address of the home repair and remodeling business."  815 ILCS 513/20 (West 2008).

Section 30 of the Act states:

"§ 30.  Unlawful Acts.  It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 of this Act.  This conduct is unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive."  815 ILCS 513/30 (West 2008).

Section 35 of the Act provides:

"§ 35. Enforcement. (a) The Attorney General or the State's Attorney of any county in this State may bring an action in the name of the people of this State against any person to restrain and prevent any pattern or practice violation of this Act. In the enforcement of this Act, the Attorney General or the State's Attorney may accept an assurance of voluntary compliance from anyone engaged in any conduct, act, or practice deemed in violation of this Act. Failure to perform the terms of any such assurance constitutes prima facie evidence of a violation of this Act.

(b) All remedies, penalties, and authority granted to the Attorney General or the State's Attorney of any county in this State by the Consumer Fraud and Deceptive Business Practices Act shall be available to him or her for enforcement of this Act, and any

violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35 (West 2008).

Section 5 of the Act sets forth the policy statement of the general assembly in enacting the statute. It states:

"§ 5. Policy. It is the public policy of this Sate that in order to safeguard the life, health, property, and public welfare of its citizens, the business of home repair and remodeling is a matter affecting the public interest. The General Assembly recognizes that improved communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers will increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in that business in this State." 815 ILCS 513/5 (West 2008).

For guidance in interpreting the Act we look to numerous published opinions of courts of review that have recently applied, interpreted and discussed provisions of the Act. First, in Central Illinois Electrical Services, L.L.C. v. Slepian, 358 Ill. App. 3d 545 (2005), the Third District held that section 15 of the Act applied to the successor to the original electrical contractor and required that successor contractor to obtain a signed "written work order of reasonable particularity" or lose its mechanic's lien rights. Slepian, 358 Ill. App. 3d at 549. In MD Electrical Contractors, Inc. v. Abrams, 228 Ill. 2d 281 (2008), the supreme court affirmed the Second District's decision and held that "it is clear that the statute unambiguously applies only to those who directly contract with a homeowner," which, in that case did not include the plaintiff subcontractor. MD Electrical Contractors, 228 Ill. 2d at 291, *aff,* 369 Ill. App. 3d 309 (2006).

Next, in Smith v. Bogard, 377 Ill. App. 3d 842 (2007), the Fourth District held that the

contractor's breach-of-contract and *quantum meruit* claims were defeated because the contractor did not comply with provisions of the Act, by failing to secure a written contract prior to initiating construction and failing to provide the owners with the consumer rights pamphlet. The contractor had proceeded with construction after providing the homeowners only with an oral estimate of "$20,000 or less" as the cost for labor and materials. Bogard, 377 Ill. App. 3d at 843. In Kunkel v. P.K. Dependable Construction, LLC, 387 Ill. App. 3d 1153 (2009), the Fifth District declared that the consumer could have a cause of action under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 through 12 (West 2002)) when the contractor failed to provide the consumer rights brochure, as required by section 20 of the Act (815 ILCS 513/20 (West 2002)), if the consumer could prove that the failure to provide the brochure was a proximate cause of his or her damages (Kunkel, 387 Ill. App. 3d at 1159-60).

Next, in K. Miller Construction Co. v. McGinnis, 394 Ill. App. 3d 248 (2009), *appeal allowed,* 234 Ill. 2d 523 (2009), this court rejected the Fourth District's decision in Bogard and held that the contractor's failure to provide a written contract under the Act did not preclude its recovery in *quantum meruit.* K. Miller Construction, 394 Ill. App. 3d at 254-55. This court considered the parties' oral agreement for remodeling work on the consumers' home and found that such an agreement was not enforceable under the Act due to the Act's writing requirement (815 ILCS 513/30 (West 2008)). K. Miller Construction, 394 Ill. App. 3d at 252. However, this court concluded that the writing requirement of the Act did not foreclose an equitable theory of recovery between, in that particular case, an honest contractor and a "sophisticated" consumer. K. Miller Construction, 394 Ill. App. 3d at 263.

Next, the Second District considered whether a contractor's failure to provide the

homeowners with the consumer rights brochure in violation of section 20 of the Act (815 ILCS 513/20 (West 2008)) forfeited its legal and equitable causes of action. Artisan Design Build, Inc. v. Bilstrom, 397 Ill. App. 3d 317 (2009). The parties had entered into a written and signed contract for the remodeling of the defendants' home. Artisan Design, 397 Ill. App. 3d at 319-20. The defendants made six out of seven payments to the plaintiff, then locked the plaintiff out of the project and hired another contractor to finish the work, leaving a portion of the contract price unpaid. Artisan Design, 397 Ill. App. 3d at 319-20. The homeowners moved to dismiss the contractor's lawsuit against them, claiming that the contractor was precluded from recovery due to its failure to provide them with the consumer rights brochure. Artisan Design, 397 Ill. App. 3d at 320.

The court in Artisan Design noted that section 20 of the Act, which sets forth the requirement of the consumer rights brochure, does not spell out the consequences to the contractor for failing to comply. In contrast, section 30 of the Act makes it "unlawful" for home repairs and remodeling to be conducted before obtaining a signed contract or work order over $1,000, and section 15.1(c) of the Act imposes "a specific sanction" for the failure to advise the consumer of the presence of the binding arbitration and jury waiver clauses. Artisan Design, 397 Ill. App. 3d at 325-27. The court explained that unlike sections 30 and 15.1(c) of the Act, section 20 does not provide that a failure to furnish the brochure constitutes an unlawful act or has any negative consequences with respect to the enforceability of a plaintiff's contract for remodeling or repairs. Rather, the prescribed contents of the brochure instruct a person who thinks he has been defrauded by a contractor to contact the State's Attorney of the Attorney General. Artisan Design, 397 Ill. App. 3d at 322-25.

The court further noted that section 35, entitled "Enforcement," provides that the Attorney General or the State's Attorney of any county may bring an action in the name of the people against any person to restrain and prevent any pattern or practice in violation of the Act. Artisan Design, 397 Ill. App. 3d at 326. Subparagraph (b) of section 35 also provides that the Attorney General or the State's Attorney has available all remedies and penalties provided for in the Consumer Fraud and Deceptive Business Practices Act. In addition, subparagraph (b) provides that "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35(b) (West 2008). The court concluded, "Therefore, we interpret the plain language of the Act to mean that a contractor's failure to provide the consumer with the brochure does not vitiate the contractor's right to recover either in equity or in law, but if certain requirements are met, the failure to furnish the brochure may give the consumer a cause of action under the Consumer Fraud and Deceptive Business Practices Act." Artisan Design, 397 Ill. App. 3d at 328-29.

The Second District further opined, "This conclusion is bolstered by section 2Z of the Consumer Fraud and Deceptive Business Practices Act, which requires a violation of the Act to be knowingly committed before it constitutes an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 5052Z (West 2006). Then, as we held in Kunkel, if a private right of action exists for violation of section 20, the plaintiff has to prove that his damages were proximately caused by the failure to provide the brochure." Artisan Design, 397 Ill. App. 3d at 329, citing Kunkel, 387 Ill. App. 3d at 1160.

In Behl v. Gingerich, 396 Ill. App. 3d 1078, 1090 (2009), the Fourth District held that a written but unsigned work order, which contained the details of the project with "reasonable

particularity," tendered by the contractor to the homeowner substantially complied with the Act to allow recovery of the outstanding amounts due to the contractor, even though the contractor did not provide the homeowner with the required consumer rights brochure. The court noted that the homeowner had contacted the plaintiff contractor about remodeling his home and the parties had worked together on construction jobs in the past. Behl, 396 Ill. App. 3d at 1090. The plaintiff submitted a written work order prior to initiating the remodeling work that contained names, addresses, and phone numbers, and a detailed description of the project. Behl, 396 Ill. App. 3d at 1090. The court concluded that the plaintiff substantially complied with the Act based on the fact that there existed a writing between the parties and evidence that each party had accepted the writing as their contract. Behl, 396 Ill. App. 3d at 1090. The court further held that the homeowner could not argue that he suffered any prejudice by the plaintiff's failure to strictly comply with the provisions of the Act, including the plaintiff's failure to provide him with the consumer rights brochure. Behl, 396 Ill. App. 3d at 1091. Relying on Artisan Design, the court noted that the consumer rights brochure "merely instructs the homeowner to contact the State's Attorney or the Attorney General if he feels he has been defrauded by a contractor." Behl, 396 Ill. App. 3d at 1091, citing Artisan Design, 397 Ill. App. 3d at 324. The court held that the homeowner could not reasonably argue that he suffered prejudice or had been defrauded by the plaintiff where the homeowner "(1) negotiated the scope and cost of the project, (2) accepted the written work order provided by plaintiff before plaintiff began the construction project, and (3) paid plaintiff in several installments during the course of the project." Behl, 396 Ill. App. 3d at 1091.

Recently, in Fandel v. Allen, 398 Ill. App. 3d 177, 188-89 (2010), the Third District held

that the plaintiff contractor's failure to procedurally comply with sections 20(a) and 30 of the Act, by obtaining the homeowner's signature on a work order and providing a consumer rights brochure, did not bar the contractor from asserting a mechanic's lien. The court noted that the Act "does not contain any language that explicitly or implicitly provides that a violation of the [Act] may be enforced by consumers in a private cause of action." Fandel, 398 Ill. App. 3d at 184. Rather, the court noted that section 35 of the Act empowers the Attorney General and State's Attorney to bring a cause of action "to restrain and prevent any pattern or practice violation." Fandel, 398 Ill. App. 3d at 184, quoting 815 ILCS 513/35 (West 2008). The court noted that the homeowner did not assert that she was unaware of her consumer rights at the time the plaintiff began work on her home but, rather, that the plaintiff's procedural errors in not securing her signature and providing the brochure barred the plaintiff from asserting a mechanic's lien upon her property. Fandel, 398 Ill. App. 3d at 185.

The court then examined provisions of the Mechanic's Lien Act (Lien Act) (770 ILCS 60/1 (West 2008)) and noted the purpose of the Lien Act is " 'to require a person with an interest in real property to pay for improvements or benefits which have been induced or encouraged by his or her own conduct.' " Fandel, 398 Ill. App. 3d at 185, quoting Leveyfilm, Inc. v. Cosmopolitan Bank & Trust, 274 Ill. App. 3d 348, 352 (1995). The court noted that section 1 of the Lien Act permits a lien upon premises where the value or the condition of the property has been increased by reason of the furnishing of labor and materials. Fandel, 398 Ill. App. 3d at 185, citing 770 ILCS 60/1 (West 2008).

Specifically, section 1(a) of the Lien Act provides in pertinent part:

"Any person who shall by any contract or contracts, express or implied, or partly

expressed or implied, with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land *** or to manage a structure under construction thereon, is known under this Act as a contractor and has a lien upon the whole of such lot or tract of land and upon adjoining or adjacent lots or tracts of land of such owner ***." 770 ILCS 60/1(a) (West 2008).

In examining these provisions, the Fandel court noted, "the Lien Act makes no distinction between oral and written contracts." Fandel, 398 Ill. App. 3d at 185. The court further explained, "Illinois law provides that a contractor's right to a mechanic's lien under the Lien Act derives from the contractor's performance of the contract. [Citation.] Thus, the pertinent question in the present case regarding whether plaintiff can assert a lien against defendant's property revolves around the validity of the agreement between the two parties and the plaintiff's performance of that agreement. The legal capacity to foreclose a mechanic's lien depends upon the validity of the lien. [Citation.] The lien, in turn, must be based upon a valid contract, and in its absence, the lien is unenforceable." Fandel, 398 Ill. App. 3d at 185.

The court then held, "While plaintiff's failure to comply with sections [20(a) and 30] does constitute an unlawful violation under the [Act], we find that this unlawful violation does not act to automatically invalidate the agreement between the parties. In coming to this conclusion, we note once again that the [Act] is void of any language which serves to invalidate the parties' agreement when the contractor fails to secure a written contract or fails to provide the homeowner with a consumer rights brochure. Instead, the [Act] merely provides that these procedural errors, along with the other procedural errors contained within its provisions, constitute unlawful violations. 815 ILCS 513/30 (West 2008)." Fandel, 398 Ill. App. 3d at 186.

1-09-1421

The court concluded that the unlawful violations under the Act did not serve to invalidate an otherwise valid oral agreement between the parties. The court held that the plaintiff's subsequent performance of that agreement created a right to a mechanic's lien under the Lien Act. Fandel, 398 Ill. App. 3d at 186-87. The court noted that if the homeowner has suffered any actual damages as a result of the plaintiff's unlawful violations, the statute has created a cause of action for her under section 10a of the Consumer Fraud and Deceptive Business Practices Act. Fandel, 398 Ill. App. 3d at 187, citing 815 ILCS 513/35, 10a (West 2006). In addition, the Attorney General or the State's Attorney is free to seek penalties against plaintiff for his unlawful violations. Fandel, 398 Ill. App. 3d at 187.

In the present case, plaintiff had previously worked on demolition at defendants' home pursuant to a written contract. The parties entered into an oral agreement to remodel defendant's home. Plaintiff tendered written, itemized work orders to defendants for approval before the work was performed and defendants paid plaintiff in several installments during the course of the project. We find that the parties entered into a valid oral agreement and, therefore, plaintiff's subsequent performance of that agreement created a right to a mechanic's lien under the Lien Act. Fandel, 398 Ill. App. 3d at 186-87.

As the court held in Fandel, the Act is void of any language which serves to invalidate the parties' agreement when the contractor fails to secure a signed written contract or work order, or fails to provide the homeowner with a consumer-rights brochure. Fandel, 398 Ill. App. 3d at 185. Nowhere does the Act state that a contract that does not strictly comply with the statute is void or otherwise unenforceable. Rather, section 30 of the Act specifically declares it to be "unlawful" for "any person engaged in the business of home repairs and remodeling to remodel or make

1-09-1421

repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000." 815 ILCS 513/30 (2008). Section 20, which sets forth the requirement of the consumer rights brochure, does not provide that a failure to furnish the brochure constitutes an "unlawful act" or that such failure has any negative consequences with respect to the enforceability of a plaintiff's contract for remodeling or repairs. 815 ILCS 513/20 (West 2008). Instead, as the court noted in Artisan Design, the proscribed contents of the brochure instruct the homeowner to contact the State's Attorney or the Attorney General if the homeowner thinks he or she has been defrauded by a contractor. Artisan Design, 397 Ill. App. 3d at 324.

In the present case, defendants do not assert that they were unaware of their consumer rights at the time they permitted plaintiff to begin remodeling work on their home or that they had been defrauded by plaintiff. Rather, defendants ask this court to find the agreement entered into with plaintiff invalid based on plaintiff's procedural errors in not securing defendants' signatures on the work orders prior to beginning construction and failing to provide defendants with the consumer rights brochure, pursuant to sections 20 and 30 of the Act. However, while plaintiff's failure to comply with the Act constitutes an unlawful violation under the Act, we find that this unlawful violation does not invalidate an otherwise enforceable agreement. Fandel, 398 Ill. App. 3d at 185.[1]

_____

[1]We note that in Roberts v. Adkins, 397 Ill. App. 3d 858 (2010), another panel of the Third District held that the plaintiff's noncompliance with the writing requirement under the Act precluded the plaintiff from recovering on his mechanic's lien claim. However, Roberts is distinguishable because the plaintiff in that case never provided a written contract or a work order. In addition, we find Artisan Design, Behl, and Fandel were better reasoned.

1-09-1421

Nothing in the Act provides that a contractor who fails to get a signature on a written work order or provide the homeowner with a consumer rights brochure cannot collect for his or her work and that the homeowner is entitled to receive a valuable benefit without paying for it. Since this statute is in derogation of the common law, it must be strictly construed. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32 (2004). Merely because a contract may violate some law or some regulation does not necessarily make that contract unenforceable. Rather, contracts are unenforceable when the subject matter of the contract or the purpose of the contract violated the law. Federal Land Bank of St. Louis v. Walker, 212 Ill. App. 3d 420, 422 (1991). This court has previously held:

> " ' "[W]here a contract could have been performed in a legal manner as well as in an illegal manner, it will not be declared void because it may have been performed in an illegal manner, since bad motives are never to be imputed to any man where fair and honest intentions are sufficient to account for his conduct. The rule has been stated to be that if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner ***." ' " Mani Electrical Contractors v. Kioutas, 243 Ill. App. 3d 662, 666 (1993), quoting Meissner v. Caravello, 4 Ill. App. 2d 428, 431-32 (1955), quoting 12 Am. Jur. Contracts §153 (1969). .

Here, the parties entered into an oral agreement and plaintiff tendered the defendants itemized work orders prior to performing remodeling work on defendants' home. Defendants advised plaintiff to proceed in accordance with the itemized work orders. Defendants also paid plaintiff, pursuant to those work orders, the sum of $1,234,544.39 out of the total requested

$1,339,042.04. We find that the underlying bargain to perform home remodeling services did not provide for or require any violation of law. Therefore, the underlying agreement between the parties was valid and plaintiff's procedural violations under the Act do not bar plaintiff from asserting a mechanic's lien or breach of contract claim. We express no opinion as to the legitimacy of plaintiff's claim for $104,497.65. The amount due, if any, should be determined by the trial court upon remand. We note that if defendants have suffered actual damages as a result of plaintiff's unlawful violation, the Act has created a cause of action for defendants under section 10(a) of the Consumer Fraud and Deceptive Business Practices Act. See 815 ILCS 513/35 (West 2008); 815 ILCS 505/10a (West 2008). Furthermore, the Attorney General or the State's Attorney is free to seek penalties against plaintiff for his unlawful violation under the Act. See 815 ILCS 513/35 (West 2008).

We further note that our decision is supported by recent proposed legislation, enacted by the Illinois Senate, to amend section 30 of the Act to provide that "Any person who suffers actual damage as a result of a violation of this Act may bring an action pursuant to Section 10a of the Consumer Fraud and Deceptive Business Practices Act." See 96th Ill. Gen. Assem., Senate Bill 2540, 2010 Sess. This amendment also eliminates the language in section 30 making it "unlawful" for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000. See 96th Ill. Gen. Assem., Senate Bill 2540, 2010 Sess.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court dismissing plaintiff's verified complaint pursuant to section 2-619 of the Code and remand the matter for

1-09-1421

further proceedings.

Reversed and remanded.

MURPHY, P.J., and COLEMAN, J., concur.