ARTISAN DESIGN BUILD, INC., Plaintiff-Appellant, v. DAVID BILSTROM *et al.*, Defendants-Appellees.

Second District   No. 2—08—0855

Opinion filed September 22, 2009.

John P. Lynch, Jr., and Matthew J. Weiss, both of Cremer, Shaughnessy, Spina, Jansen & Siegert, LLC, of Chicago, for appellant.

James F. McCluskey, James S. Harkness, and Lauryn E. Parks, all of Momkus McCluskey, LLC, of Lisle, for appellees.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiff, Artisan Design Build, Inc., appeals from an order of the circuit court of Du Page County dismissing its complaint against defendants, David and Jody Bilstrom, for failing to furnish defendants with a consumer rights brochure, in violation of the Illinois Home Repair and Remodeling Act (Act) (815 ILCS 513/20 (West 2006)). The lawsuit arose out of a contract to remodel defendants' Hinsdale, Illinois, home. For the reasons that follow, we affirm the judgment of the circuit court in part and reverse in part, and we remand the cause.

## BACKGROUND

On April 18, 2008, plaintiff filed an amended verified complaint for foreclosure of its mechanic's lien and other relief. In count I of the amended complaint, plaintiff sought to foreclose its mechanic's lien; count II alleged a breach of contract; and count III pleaded a cause of action for unjust enrichment. The amended complaint alleged the following facts. Plaintiff is a contractor with its principal place of business in Monroe, Wisconsin. Defendants are a married couple residing in Hinsdale, Illinois. On or about January 10, 2005, defendants entered into a written contract with plaintiff to make improvements to defendants' home for the sum of $534,970.[1] The parties agreed to

---

[1]The contract dates are confusing. Terry Martin, a partner with plaintiff, signed the document on December 1, 2004. Jody Bilstrom signed an "Additions and Deletions Report" attached to the contract on January 10, 2005, and David signed the "Additions and Deletions Report" on January 12, 2005. According to change order number one dated November 2, 2005, the contract date was September 8, 2004. The contract provided that work was to commence on September 8, 2004.

eight change orders, which significantly increased the contract price. Plaintiff submitted six draws to defendants, which they paid. Defendants failed to pay the seventh draw despite plaintiff's repeated requests for payment. Plaintiff alleged that it provided material and labor pursuant to the contract terms, including the change orders, until September 20, 2006, at which time the project was "substantially complete." According to the amended complaint, defendants locked plaintiff out of the project on September 20, 2006, and advised plaintiff that they had hired another contractor to complete the work. Plaintiff alleged that it was not given an opportunity to cure any defects and that, as of September 20, 2006, after allowing for all credits, defendants owed it in excess of $208,695.69.

On May 23, 2008, defendants filed a motion to dismiss the amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2006)). The first part of the motion to dismiss was based on the Act and alleged that plaintiff's failure to provide defendants with the consumer rights brochure, its failure to commence or complete work within the contracted time period, and its failure to obtain and maintain the requisite insurance were all violations of the Act, which precluded plaintiff's recovery under its legal and equitable claims. The second part of the motion to dismiss alleged that plaintiff's breach of the contract precluded recovery. After plaintiff requested discovery on the breach-of-contract portion of the motion to dismiss, defendants withdrew the breach-of-contract argument as a basis for dismissal "in order to proceed to a ruling on a pure question of law" and to preserve the scheduled trial date. On June 23, 2008, the trial court entered an order withdrawing the breach-of-contract argument in support of the motion to dismiss "in its entirety." On August 15, 2008, the trial court granted the motion to dismiss on the basis that plaintiff admittedly did not furnish defendants with the consumer rights brochure as provided for in the Act.

Article 10, section 10.1, of the contract provided that disputes between the parties "shall be subject to and decided by mediation or arbitration." According to transcripts, after plaintiff filed its original complaint in the circuit court and before it filed its amended complaint, the parties by agreement continued the case from time to time, citing efforts to resolve the matter by informally exchanging documents and experts' opinions. When the case did not informally resolve, plaintiff filed an arbitration complaint with the American Arbitration Association, alleging that defendants breached the contract. In response, defendants filed a motion in the circuit court to stay and strike arbitration, arguing that the contract was void because

of plaintiff's failure to follow the requirements of the Act and that the arbitration clause in the contract was void because plaintiff waived it by filing suit in the circuit court. The trial court ruled that plaintiff waived the arbitration clause by filing the lawsuit, "which requested complete relief." Thereafter, plaintiff filed the amended complaint, which, as noted above, the trial court dismissed with prejudice. Plaintiff filed a timely notice of appeal.

## ANALYSIS

Plaintiff raises two issues in this appeal. It first contends that it did not violate the Act and the trial court erred in dismissing the amended complaint. Plaintiff's second issue is that it did not waive the contract's arbitration clause. Before we address either issue on the merits, we will dispose of two outstanding motions we ordered taken with the case.

■ The first is plaintiff's motion for leave to cite *Kunkel v. P.K. Dependable Construction, LLC*, 387 Ill. App. 3d 1153 (2009), as additional authority, which we grant. The second is plaintiff's motion to strike the introductory paragraph of defendants' brief and to strike the statement of facts in defendants' brief. Plaintiff asserts that both sections offend supreme court rules.

Supreme Court Rule 341(h)(2) (210 Ill. 2d R. 341(h)(2)) governs the requirements of the introductory paragraph. It provides that the introductory paragraph consists of a statement of the nature of the action, the judgment appealed from, whether the judgment is based upon a jury's verdict, and whether any question is raised on the pleadings. 210 Ill. 2d R. 341(h)(2). Moreover, only the appellant's brief is required to contain an introductory paragraph. The appellee's brief may include one to the extent that the presentation by the appellant is deemed unsatisfactory. 210 Ill. 2d R. 341(i). Argument is not to be included in the introductory paragraph. *SBC Holdings, Inc. v. Travelers Casualty & Surety Co.*, 374 Ill. App. 3d 1, 15 (2007). Defendants' introductory paragraph is two pages long with one footnote. As vigorously as defendants try to justify it, the entire introductory paragraph is argumentative in violation of the rule. Accordingly, we grant the motion to strike.

Plaintiff moves to strike defendants' statement of facts as argumentative, fraught with misstatements, and containing material from their withdrawn argument in support of the motion to dismiss, that plaintiff breached the contract. Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)) provides that the statement of facts shall contain the facts

necessary to an understanding of the case, stated accurately and fairly, without argument or comment, and with appropriate reference to the pages of the record. We agree with plaintiff that defendants' statement of facts in large part is argumentative in violation of the rule. The last sentence of the opening paragraph is illustrative: "[Defendants], however, have done nothing wrong and have been subjected to [plaintiff's] breaches of the law for far too long." Much of the statement of facts is an argument justifying why defendants stopped paying plaintiff, punctuated with underlining and exclamation points. This portion of the statement of facts appears to be an effort to sway the court with matters not germane to the issues on appeal. Defendants portray this as necessary to counter what they perceive as similar tactics by plaintiff. We remind defendants' counsel that they are required to follow Rule 341(h)(6), having opted to include a statement of facts in the appellees' brief. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1103 (2006). Rather than strike the entire statement of facts, we disregard the portions that violate the rule and admonish counsel for defendants to comply with the supreme court rules in the future. *Village of Roselle*, 368 Ill. App. 3d at 1103. Accordingly, plaintiff's motion to strike the statement of facts is denied.

■ The first issue in this appeal is whether plaintiff's legal and equitable claims were subject to dismissal for its failure to furnish defendants with a consumer rights brochure as provided in section 20 of the Act (815 ILCS 513/20 (West 2006)), which specifically provides as follows:

"(a) For any contract over $1,000, any person engaging in the business of home repair and remodeling shall provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract. The consumer shall sign and date an acknowledgment form entitled 'Consumer Rights Acknowledgment Form' that states: 'I, the homeowner, have received from the contractor a copy of the pamphlet entitled "Home Repair: Know Your Consumer Rights." ' The contractor or his or her representative shall also sign and date an acknowledgment form, which includes the name and address of the home repair and remodeling business. The acknowledgment form shall be in duplicate and incorporated into the pamphlet. The original acknowledgment form shall be retained by the contractor and the duplicate copy shall be retained within the pamphlet by the consumer.

(b) For any contract for $1,000 or under, any person engaging in the business of home repair and remodeling shall provide to its

customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet. No written acknowledgment of receipt of the pamphlet is required for a contract of $1,000 or under.

(c) The pamphlet must be a separate document, in at least 12 point type, and in legible ink. The pamphlet shall read as follows:

## 'HOME REPAIR: KNOW YOUR CONSUMER RIGHTS

As you plan for your home repair/improvement project, it is important to ask the right questions in order to protect your investment. The tips in this fact sheet should allow you to protect yourself and minimize the possibility that a misunderstanding may occur.

## AVOIDING HOME REPAIR FRAUD

Please use extreme caution when confronted with the following warning signs of a potential scam:

(1) Door-to-door salespersons with no local connections who offer to do home repair work for substantially less than the market price.

(2) Solicitations for repair work from a company that lists only a telephone number or a post-office box number to contact, particularly if it is an out-of-state company.

(3) Contractors who fail to provide customers references when requested.

(4) Persons offering to inspect your home for free. Do not admit anyone into your home unless he or she can present authentic identification establishing his or her business status. When in doubt, do not hesitate to call the worker's employer to verify his or her identity.

(5) Contractors demanding cash payment for a job or who ask you to make a check payable to a person other than the owner or company name.

(6) Offers from a contractor to drive you to the bank to withdraw funds to pay for the work.

## CONTRACTS

(1) Get all estimates in writing.

(2) Do not be induced into signing a contract by high-pressure sales tactics.

(3) Never sign a contract with blank spaces or one you do not fully understand. If you are taking out a loan to finance the work, do not sign the contract before your lender approves the loan.

(4) Remember, you have 3 business days from the time you sign your contract to cancel any contract if the sale is made at your home. The contractor cannot deprive you of this right by initiating work, selling your contract to a lender, or any other tactic.

(5) If the contractor does business under a name other than the contractor's real name, the business must either be incorporated or registered under the Assumed Business Name Act. Check with the Secretary of State to see if the business is incorporated or with the county clerk to see if the business has registered under the Assumed Business Name Act.

(6) Homeowners should check with local and county units of government to determine if permits or inspections are required.

(7) Determine whether the contractor will guarantee his or her work and products.

(8) Determine whether the contractor has the proper insurance.

(9) Do not sign a certificate of completion or make final payment until the work is done to your satisfaction.

(10) Remember, homeowners should know who provides supplies and labor for any work performed on your home. Suppliers and subcontractors have a right to file a lien against your property if the general contractor fails to pay them. To protect your property, request lien waivers from the general contractor.

## BASIC TERMS TO BE INCLUDED IN A CONTRACT

(1) Contractor's full name, address, and telephone number. Illinois law requires that persons selling home repair and improvement services provide their customers with notice of any change to their business name or address that comes about prior to the agreed dates for beginning or completing the work.

(2) A description of the work to be performed.

(3) Starting and estimated completion dates.

(4) Total cost of work to be performed.

(5) Schedule and method of payment, including down payment, subsequent payments, and final payment.

(6) A provision stating the grounds for termination of the contract by either party. However, the homeowner must pay the contractor for work completed. If the contractor fails to commence or complete work within the contracted time period, the homeowner may cancel and may be entitled to a refund of any down payment or other payments towards the work, upon written demand by certified mail.

Homeowners should obtain a copy of the signed contract and keep it in a safe place for reference as needed.

## IF YOU THINK YOU HAVE BEEN DEFRAUDED OR YOU HAVE QUESTIONS

If you think you have been defrauded by a contractor or have any questions, please bring it to the attention of your State's Attorney or the Illinois Attorney General's Office.

Attorney General Toll-Free Numbers
Carbondale                                    (800) 243-0607
Springfield                                   (800) 243-0618
Chicago                                       (800) 386-5438.' "

In order to decide whether a contractor's failure to provide its customer with the brochure results in the contractor forfeiting its legal and equitable causes of action, we must interpret the Act. Our standard of review is *de novo*. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 286 (2008). Our goal is to ascertain and give effect to the intent of the legislature. *MD Electrical*, 228 Ill. 2d at 287. The means of effectuating this goal is to read the statutory language and give the words their plain and ordinary meaning. *MD Electrical*, 228 Ill. 2d at 287. It is not sufficient to read a portion of the statute in isolation; rather, we must read the statute in its entirety, bearing in mind the subject it addresses and the legislature's apparent objective in enacting it. *MD Electrical*, 228 Ill. 2d at 287. Where the language is clear and unambiguous, we must apply it as written, without resort to tools of construction. *MD Electrical*, 228 Ill. 2d at 287-88. At this point, before we address section 20 specifically, it is useful to look at the other provisions of the Act.

In the Act, the legislature declared the following policy:

"It is the public policy of this State that in order to safeguard the life, health, property, and public welfare of its citizens, the business of home repair and remodeling is a matter affecting the public interest. The General Assembly recognizes that improved communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers will increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in that business in this State." 815 ILCS 513/5 (West 2006).

Section 15 provides that prior to initiating home repair or remodeling work for over $1,000, a person engaged in home repair or remodeling shall furnish to the customer for signature a written contract or work order stating the total cost, including parts and materials listed with reasonable particularity and any charge for an estimate. In addition, the written contract shall state the business name and address of the person engaged in home repair or remodeling. 815 ILCS 513/15 (West 2006). Section 15.1 requires a person engaged in home repair and remodeling to advise the consumer, before the acceptance and execution of the contract, of any binding arbitration and waiver of jury trial clauses, which the consumer has the option of accepting or rejecting. Failure to advise the consumer of the presence of such clauses or to

secure the necessary acceptance or rejection renders null and void each such clause not accepted or rejected and signed by the consumer. 815 ILCS 513/15.1 (West 2006). Section 25 requires a person engaged in home repair and remodeling to maintain a minimum amount of insurance (815 ILCS 513/25 (West 2006)), and section 30 declares:

"It is unlawful for any person engaged in the business of home repairs [sic] and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 of this Act. This conduct is unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive." 815 ILCS 513/30 (West 2006).

Section 35 states that the Act may be enforced by the Attorney General or the State's Attorney of any county, that all remedies, penalties, and authority granted to the Attorney General or the State's Attorney of any county by the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)) shall be available to him or her for enforcement of the Act, and that "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act" (815 ILCS 513/35 (West 2006)).

■ Few courts have interpreted the Act. In *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545 (2005), the Third District of the Appellate Court held that section 15 of the Act unambiguously requires anyone, including a successor to the original electrical contractor, to obtain a signed written contract and furnish an estimate of reasonable particularity or lose its mechanic's lien rights. *Slepian*, 358 Ill. App. 3d at 548. In *MD Electrical Contractors, Inc. v. Abrams*, 369 Ill. App. 3d 309 (2006), this court addressed the question of whether the Act applies to subcontractors as well as contractors, and we concluded that it does not. *Abrams*, 369 Ill. App. 3d at 314-15. Next, the Fourth District decided *Smith v. Bogard*, 377 Ill. App. 3d 842 (2007), in which the contractor's legal and equitable claims were defeated because the contractor failed to secure a written contract prior to initiating construction and failed to provide the owners with the consumer rights pamphlet. *Smith*, 377 Ill. App. 3d at 848. Our supreme court affirmed this court in *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281 (2008). The Fifth District in *Kunkel* declared that for a private right of action to exist under the Act for a failure to furnish the consumer rights brochure, the plaintiff must prove that the failure to provide the brochure proximately caused his

damages. *Kunkel*, 387 Ill. App. 3d at 1160. The last court to consider the Act was the First District, which held in *K. Miller Construction Co. v. McGinnis*, 394 Ill. App. 3d 248 (2009), that the failure to provide a written contract does not preclude a contractor's recovery in *quantum meruit*, rejecting the contrary holding in *Smith*. The question presented here, whether the failure alone to provide the brochure is a complete defense to all legal and equitable claims brought by the contractor, has not been answered by the appellate or supreme court.

Plaintiff first questions whether the Act applies to contractors such as itself, which does not employ door-to-door salesmen and which, in this instance, entered into contract negotiations with defendants through their former counsel. According to plaintiff, the Act was designed to "protect the disadvantaged, not serve as a trap for the unwary," the unwary being plaintiff, a Wisconsin resident without knowledge of the Act at the time it entered into the contract. Plaintiff cites Justice Barry's partial dissent in *Slepian*, where, after reviewing the language of the legislatively mandated consumer rights brochure, Justice Barry concluded that the Slepians "do not fall into the class of consumers the legislature was seeking to protect and [plaintiff] does not fall into the category of contractors from whom the legislature was seeking to protect consumers." *Slepian*, 358 Ill. App. 3d at 554 (Barry, J., concurring in part and dissenting in part). Justice Barry pointed out that the contractor did not employ door-to-door salesmen using high-pressure tactics and the Slepians were not naive or inexperienced consumers in danger of being defrauded. *Slepian*, 358 Ill. App. 3d at 554 (Barry, J., concurring in part and dissenting in part).

By the Act's plain language, its application is not limited to the category of contractors described by Justice Barry. "Home repair and remodeling" means the fixing, replacing, altering, converting, modernizing, improving, or making of an addition to any real property primarily designed or used as a residence other than maintenance, service, or repairs less than $500. 815 ILCS 513/10 (West 2006). "Person" means "any individual, partnership, corporation, business, trust, or other legal entity." 815 ILCS 513/10 (West 2006). Our supreme court instructed that the "entire focus of the Act is on regulating the direct contact and contracting between the 'person' and the homeowner or consumer." *Abrams*, 228 Ill. 2d at 291. The Act applies to those who contract directly with the consumer. *Abrams*, 228 Ill. 2d at 291. In our case, according to plaintiff's verified amended complaint, plaintiff is a "corporation engaged in the business of design/build contracting" that entered into a contract with defendants to make improvements to defendants' real property. Consequently, plaintiff had direct contact with and contracted with defendants and is subject to the Act.

Plaintiff contends that neither the Act nor the Consumer Fraud and Deceptive Business Practices Act provides for outright dismissal of a plaintiff's legal and equitable causes of action for failure to furnish the consumer rights brochure. Defendants maintain that plaintiff raises this argument for the first time on appeal and has thus waived it. The waiver argument is without merit, as plaintiff argued before the trial court that only contractual violations can result in dismissal under the Act.

We must read the Act in its entirety. *Abrams*, 228 Ill. 2d at 287. Statutes should be read as a whole with all relevant parts considered. *Abrams*, 228 Ill. 2d at 291, citing *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). Section 30 of the Act specifically declares it to be unlawful for any person engaged in the business of home repair and remodeling to remodel or make repairs or charge for the remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause. Section 15.1(c) provides a specific sanction for failure to advise the consumer of the presence of the binding arbitration and jury waiver clauses, which is to render those clauses null and void. Therefore, with respect to those sections, the legislature spelled out the consequences to the contractor of failing to comply.

In contrast, section 20, which sets forth the requirement of the consumer rights brochure, does not provide that a failure to furnish it constitutes an unlawful act or that such failure has any negative consequences with respect to the enforceability of a plaintiff's contract for remodeling or repairs. Rather, the prescribed contents of the brochure instruct a person who thinks he has been defrauded by a contractor to contact the State's Attorney or the Attorney General. Section 35, entitled "Enforcement," provides that the Attorney General or the State's Attorney of any county may bring an action in the name of the people against any person to restrain and prevent any pattern or practice in violation of the Act. Subparagraph (b) of section 35 further provides that the Attorney General or the State's Attorney has available all remedies and penalties provided for in the Consumer Fraud and Deceptive Business Practices Act. In addition to the foregoing, subparagraph (b) also provides that "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35(b) (West 2006). Therefore, we interpret the plain language of the Act to mean that a contractor's failure to provide the consumer with the brochure does not vitiate the contractor's right to recover either in equity or in law, but if certain requirements are met, the failure to furnish the brochure may give

the consumer a cause of action under the Consumer Fraud and Deceptive Business Practices Act.

This conclusion is bolstered by section 2Z of the Consumer Fraud and Deceptive Business Practices Act, which requires a violation of the Act to be knowingly committed before it constitutes an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 505/2Z (West 2006). Then, as was held in *Kunkel*, if a private right of action exists for violation of section 20, the plaintiff has to prove that his damages were proximately caused by the failure to provide the brochure. *Kunkel*, 387 Ill. App. 3d at 1160.

Defendants argue that section 30 of the Act allows for other conduct to constitute an unlawful act: "This conduct [engaging in repair or remodeling before obtaining a signed contract or notifying and securing acceptance or rejection of the binding arbitration and jury waiver clauses] is unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive." 815 ILCS 513/30 (West 2006). Defendants assert that this language encompasses a failure to furnish the brochure. We disagree. The brochure is only an advisement of consumer rights, not an embodiment of the rights themselves. The first section of the brochure states: "As you plan for your home repair/improvement project, it is important to ask the right questions in order to protect your investment. The tips in this fact sheet should allow you to protect yourself and minimize the possibility that a misunderstanding may occur." 815 ILCS 513/20(c) (West 2006). By its nature, the brochure is a "tip" sheet designed to educate consumers.

The pamphlet prescribed in section 20 of the Act advises consumers in the most general and simple terms to beware of door-to-door salespersons, essentially "fly-by-night" operators. Again, in the most general and simple terms, it advises consumers to get all estimates in writing; never to sign a contract with blank spaces; to check with the Secretary of State's office to see if the business is incorporated or to check with the county clerk to ascertain if it is doing business under an assumed name; to determine whether the contractor guarantees his work and has insurance; and of a material supplier's and subcontractor's right to a mechanic's lien on their property. The pamphlet advises of the basic terms to be included in a contract: the contractor's full name, address, and telephone number, a description of the work to be performed, starting and estimated completion dates, total cost of the work to be performed, a schedule and method of payment, and a provision stating the grounds for termination of the contract by either party. The consumer rights brochure is not made

part of the contract, and it specifically spells out that the homeowner must pay the contractor for work completed. The brochure is purely informational and does not touch upon any substantive rights affecting either the consumer or the contractor the way a written contract, a work order, and the binding arbitration and jury trial waiver clauses do, for instance.

■ To hold that a failure to provide a consumer with the brochure allows the consumer to defeat all legal and equitable claims by the contractor would lead to mischief and a result the legislature could not have intended. A consumer could enjoy the fruits of another's labor in the amount of even hundreds of thousands of dollars without paying a penny even where the contractor performed to the complete satisfaction of the consumer. While it is true that the constitutional guarantee of freedom of contract does not withdraw from legislative supervision the power to provide restrictive safeguards in the form of reasonable regulations and prohibitions in the interests of the community, liberty implies the absence of arbitrary restraints. *Illinois Housing Development Authority v. La Salle National Bank*, 139 Ill. App. 3d 985, 990 (1985).

Defendants rely particularly on *Smith* for the proposition that *any* violation of the Act voids the contract. *Smith* is distinguishable, because the contractor there also failed to provide a written contract or work order prior to initiating the work in addition to failing to provide the owner with the consumer rights brochure. However, to the extent that *Smith* may be read broadly enough to hold that the failure alone to provide the brochure defeats a contractor's claims, we decline to follow it.

As another ground for upholding the trial court's judgment in this case, defendants urge that plaintiff violated the Act in failing to comply with section 25, which requires the contractor to obtain and maintain public liability and property damage insurance in the amount of $100,000 per person and $300,000 per occurrence of bodily injury and $50,000 per occurrence of property damage, unless other conditions apply. This argument is without merit. The record contains a certificate of liability insurance of $1 million per occurrence with an excess limit of $5 million per occurrence. Accordingly, the trial court erred in dismissing plaintiff's amended complaint.

■ Having determined that the amended complaint was improperly dismissed, we now address plaintiff's second argument, that it did not waive arbitration by filing the lawsuit in the circuit court. Section 10.1 of the contract provided that claims, disputes, or other matters in question between the parties shall be subject to and decided by mediation or arbitration. Section 10.2 required that the parties endeavor to

settle disputes by mediation prior to arbitration. According to plaintiff, it filed the complaint in the circuit court in the first instance on December 5, 2006, in order to preserve its mechanic's lien. On February 21, 2007, defendants filed a motion for a pretrial conference "in order to apply any setoffs to the total amount claimed due." Thereafter, the attorneys for both sides voluntarily exchanged numerous documents (although they argued over whether document production was sufficient) and agreed to continue the matter numerous times pursuant to their informal efforts to resolve the dispute.

We need not try to fix blame on one side or the other for why their efforts failed or venture into the convoluted analysis each side undertakes on the issue of whether plaintiff waived the arbitration provision of the contract. As we discussed above, section 15.1 of the Act provides that a person engaged in home repair and remodeling shall advise the consumer of and shall give the consumer the option of accepting or rejecting a contractual arbitration clause. The acceptance or rejection is to be memorialized by the consumer's signature in the margin next to the written notation "accept" or "reject" in the executed contract. Failure to secure the necessary acceptance, rejection, or consumer signature shall render the clause null and void. In this case, plaintiff did not secure the required signatures in the margin next to the arbitration and mediation clauses of the contract. Consequently, those clauses are void. While the trial court held that plaintiff waived arbitration when it filed suit requesting complete relief, this court can affirm on any basis found in the record. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 572 (2008). Accordingly, we reject plaintiff's argument that it is entitled to arbitration pursuant to the contractual terms.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and O'MALLEY, JJ., concur.