2026 IL App (1st) 250502-U

SECOND DIVISION
May 26, 2026

No. 1-25-0502

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| VALENTINA FORNADEL and MARIA GROSZEW, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs-Appellants, | ) Cook County |
| | ) |
| v. | ) No. 2021 CH 06391 |
| | ) |
| ROSA KELLY, | ) Honorable |
| | ) Alison C. Conlon, |
| Defendant-Appellee. | ) Judge, Presiding |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred with the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's dismissal of plaintiffs' second-amended complaint with prejudice and the denial of plaintiffs' motion for leave to file a third-amended complaint.

¶ 2    Jewdokia Sawczenko passed away in October of 2021 after battling cancer. Plaintiffs Valentina Fornadel and Maria Groszew initiated the underlying proceedings to challenge an amendment Mrs. Sawczenko made, prior to her death, regarding the beneficiary of her land trust. The trial court ultimately dismissed their second-amended complaint with prejudice. On appeal, plaintiffs contend that the trial court (1) improperly barred plaintiffs from discovery that would

have aided in pleading factual matters in their complaint; (2) erred in dismissing their second-amended complaint with prejudice; and (3) should have granted plaintiffs leave to file a third-amended complaint. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiffs are Mrs. Sawczenko's nieces who reside in New Jersey, and defendant Rosa Kelly is her daughter. Until her death, Mrs. Sawczenko resided in and owned property located at 4683 N. Kason Avenue in Chicago. Defendant lived across the street from her mother.

¶ 5     On June 13, 2020, Mrs. Sawczenko transferred title of her property to a land trust with Chicago Title Land Trust Company (Chicago Title). The record does not identify the parties who were made beneficiaries of the trust at the time. On February 23, 2021, Mrs. Sawczenko executed an "Amendment of the Contingent Beneficial Interest" of the trust. The document provided that in the event of Mrs. Sawczenko's death, each plaintiff would be granted an undivided 50 percent beneficial interest in the trust.

¶ 6     That same day, Mrs. Sawczenko executed her last will and testament. In her will, Mrs. Sawczenko stated that the land trust documents were "amended concurrently with this instrument" to confirm her intent that plaintiffs receive the property. Her will stated that defendant would receive $50, and her granddaughter, the daughter of her deceased son, Anatol, would also receive $50. The remainder of Mrs. Sawczenko's assets, including all her personal property, "all monies in any bank or institutional accounts," and any remaining interests, would be divided 50 percent to each plaintiff. Valentina was made executor of the will and Maria was the successor executor.

¶ 7     On September 3, 2021, Mrs. Sawczenko executed another "Amendment of the Contingent Beneficial Interest" form which changed the contingent beneficiary of the trust to defendant. The form was notarized by the same notary who stamped the prior amendment on February 23, 2021.

Mrs. Sawczenko was a member of the credit union where the notary worked. Since Mrs. Sawczenko did not drive, defendant drove her to the credit union that day.

¶ 8    After Mrs. Sawczenko's death, plaintiffs contacted Chicago Title and learned that they were no longer listed as contingent beneficiaries on the land trust. They also learned that defendant had been named the beneficiary.

¶ 9    On December 27, 2021, plaintiffs filed a complaint against defendant and Chicago Title as trustee of the land trust. On February 28, 2022, plaintiffs served defendant with discovery requests. Defendant filed a motion to dismiss the complaint and a motion to stay discovery pending the resolution of the motion to dismiss. On July 21, 2022, the trial court granted the motion to dismiss and ordered a stay of discovery. Plaintiffs were given leave to file an amended complaint by August 31, 2022. The trial court also ordered defendant to provide plaintiffs with a copy of the land trust file by July 29, 2022, and to inform plaintiffs of the location of Mrs. Sawczenko's remains.

¶ 10    After receiving the land trust documents from defendant, plaintiffs requested more time to file their amended complaint so they could investigate the circumstances of the amendment executed on September 3, 2021. The trial court granted the motion. The court also granted plaintiffs' request to depose the notary who stamped both amendments. The notary, Oksana Maliniak, was deposed on September 28, 2022.

¶ 11    At her deposition, Maliniak stated that she worked as a branch manager for "Federal Union, Selfreliance," located at 5000 N. Cumberland Avenue in Chicago. She was also an Illinois notary public. She stated that it was the credit union's policy to notarize documents only for its members. When a member asks for notarization of a document, Maliniak would ask for photo identification

and then make an entry in a logbook. After the member signed the document, Maliniak would notarize his or her signature.

¶ 12     Plaintiffs' counsel asked Maliniak why there were two notary seals on the land trust amendment Mrs. Sawczenko signed on September 3, 2021. She stated that Mrs. Sawczenko was an "old lady" who came with her daughter, and that she had signed only with the first letter of her first name. Maliniak notarized that signature. The daughter then asked her mother to sign with her full first name. After she signed her full name on the same document, Maliniak also notarized that signature.  Maliniak explained that "[i]t's the same person signed twice." Maliniak stated that as a notary, she was not interested in the contents of the document because "[w]e notarize only the signature of the member." She was not concerned about the different signatures on the document because Mrs. Sawczenko "signed [the] documents in my presence."

¶ 13     Maliniak stated that Mrs. Sawczenko first signed with only "J" as her first name because it was very difficult for her to write her whole name. Maliniak explained that because this occurred during COVID, there was a plastic shield separating her from Mrs. Sawczenko and it was difficult for Mrs. Sawczenko to sign the document in that setting. Mrs. Sawczenko also asked her daughter to enter the date on the document.

¶ 14     Maliniak stated that Mrs. Sawczenko arrived with a person she introduced as her daughter. Maliniak could tell from the look on Mrs. Sawczenko's face that she was glad to have her daughter with her. Mrs. Sawczenko was the person who spoke to Maliniak and asked her to notarize the document. When Maliniak noticed something "unnatural" on Mrs. Sawczenko's neck, she told Maliniak that she was ill with cancer. Maliniak recognized Mrs. Sawczenko as someone she "often met *** as our member in the office." During the encounter, Maliniak spoke with Mrs. Sawczenko for about eight to ten minutes.

¶ 15    After Maliniak's deposition, plaintiffs filed their amended complaint. This pleading was subsequently stricken by the trial court, and plaintiffs were again granted leave to amend.

¶ 16    On September 20, 2023, plaintiffs filed their second-amended complaint. The complaint alleged that Mrs. Sawczenko was the plaintiffs' aunt, and that they "maintained a warm and cordial family relationship" through regular phone calls. In 2021, Mrs. Sawczenko informed plaintiffs that she provided for them in her will and directed that they receive her home and most of her personal property upon her death. Plaintiffs alleged that Mrs. Sawczenko refused contact with defendant "for at least two decades [prior to] February 2021," and that at her death at the age of 93, she remained fearful of defendant.

¶ 17    The complaint alleged that after plaintiffs learned of Mrs. Sawczenko's death, they contacted Chicago Title and discovered they were no longer listed as the contingent beneficiaries of the land trust. Plaintiffs alleged that in the fall of 2021, when the second land trust amendment was executed, Mrs. Sawczenko "was gravely ill and effectively bedridden and incapable of understanding documents in the English language." Plaintiffs also learned that defendant had driven Mrs. Sawczenko to a bank about a month before her death and told her mother to sign the document twice. They alleged that the second signature "misspelled her first name" and was "unlike any other known to Plaintiffs."

¶ 18    The second-amended complaint contained four counts, each incorporating the "Common Allegations." The first count sought recission of the September 2021 land trust amendment because it was not a "valid instrument." As support, plaintiffs pointed to the suspect signatures of Mrs. Sawczenko appearing on the document and that Mrs. Sawczenko was not read the contents of the document while in the presence of the notary. They also alleged that recission was mandated

because defendant "never accepted any alleged 'interest' in this land trust – and the beneficial interest is still held in the name of Jewdokia Sawczenko."

¶ 19    Count two sought the imposition of a constructive trust regarding the land trust property. This count also alleged, as support, the suspect circumstances of Mrs. Sawczenko's signature on the latest land trust amendment, and that defendant never accepted any interest in the land trust. Plaintiffs alleged that a constructive trust was an appropriate remedy where defendant sought "to have the beneficial interest in the real estate transferred for her own benefit without the actual consent of Jewdokia Sawczenko." They alleged that Mrs. Sawczenko was "taken by Defendant Kelly to a bank and told by Defendant Kelly to sign a document twice when she was terminally ill in September 2021 and had a bulge on her neck related to the cancer which was killing her." Plaintiffs argued that "[t]he imposition of a constructive trust upon the real estate at issue should be invoked to prevent Defendant Rosa Kelly from unjustly enriching herself" with property she "gained by abusing a relationship with the late Jewdokia Sawczenko."

¶ 20    In count three, plaintiffs sought a declaratory judgment finding that the September 2021 land trust amendment was invalid, based on the same suspect circumstances, and finding that all beneficial interest in 4683 N. Kasson "was vested in the Plaintiffs" upon the death of Mrs. Sawczenko. Plaintiffs contended that an actual controversy existed "relating to the ownership interest" in the real estate covered by the land trust.

¶ 21    Count four of plaintiffs' second-amended complaint alleged tortious interference with an inheritance expectancy. Plaintiffs alleged that, through conversations with their aunt, they had and continued to have a reasonable certainty of being the beneficiaries of the land trust she created. By arranging the execution of the September 2021 land trust amendment, defendant "intentionally and deliberately and contumaciously interfered with [plaintiffs'] expectancy knowing that the effect of

that interference would be to seek to disinherit the Plaintiffs." Plaintiffs alleged that defendant exerted "undue influence" by "driving a dying person to a bank and directing the dying person to sign her name twice on a document which the dying person could not read by herself and which was not read to her *** [or] prepared by her."

¶ 22    Plaintiffs alleged that Mrs. Sawczenko had been afraid of defendant "for many years" and on two separate occasions, informed others of her fear. Plaintiffs attached copies of an affidavit from Patricia Sawczenko and sworn statements of Arnold Smith to the complaint.

¶ 23    Patricia stated that she was once married to Mrs. Sawczenko's son, Anatol, who is now deceased. They had a daughter, Gina, who is Mrs. Sawczenko's granddaughter. Patricia stated that she maintained a good relationship with Mrs. Sawczenko after her divorce from Anatol, and her daughter and her daughter's husband had stayed with Mrs. Sawczenko in Chicago from October 2020 to January 2021. Around November 2020, Gina called her mother and told her that Mrs. Sawczenko was hospitalized. Since Mrs. Sawczenko was afraid of defendant and refused to see her, Gina asked Patricia for help. Patricia drove 15 hours from her home in Wyoming to help Mrs. Sawczenko. Based on her observations, Mrs. Sawczenko had a "very poor relationship" with defendant and was afraid of her. She did not want defendant "anywhere near her" even though defendant lived nearby. Patricia stated that after Anatol died, Mrs. Sawczenko told her that defendant and defendant's husband had removed a safe and money from her residence, as well as car keys belonging to Anatol.

¶ 24    In his affidavit, Arnold Smith stated that he was Mrs. Sawczenko's neighbor for thirty years. She was in good health until she was diagnosed with mouth cancer. He was shocked when he saw her at her home on September 11 or 12, 2021. She was "in a completely infirm position and lying in bed and not being able to recognize" Smith. She had trouble "saying anything

coherent." Anatol lived with his mother, and after Anatol's death in 2020, Smith observed defendant and her husband removing items, including a large safe, from the home. Mrs. Sawczenko told Smith that defendant took money from her and bullied her, and from his observation, she did not interact with defendant. She said she was afraid of defendant. In February of 2021, Smith was a witness when Mrs. Sawczenko signed her will giving plaintiffs her property. He stated that Mrs. Sawczenko gave him the original will for safekeeping.

¶ 25    Smith later provided a sworn supplement to his affidavit. Therein, he stated that he "was observing when Jewdokia Sawczenko called Chicago Police soon after her son – who had lived with her – passed away." The reason for the call, according to Mrs. Sawczenko, was that defendant and her husband were "looting" personal property in her home. She was advised by the police to change the locks to her home so that defendant "would never be able to come in again." Smith stated that Mrs. Sawczenko told him that she was afraid defendant would "take her property away and would possibly force her to do things against her will." Smith stated that within a day or two of his last visit with Mrs. Sawczenko, someone changed the locks on the gate separating his home from Mrs. Sawczenko's house. As a result, he was "never able to access her property again, as had been the case for many years before."

¶ 26    Plaintiffs also attached a June 13, 2020 letter sent to Patrick Kelly, defendant's husband, from Mrs. Sawczenko's attorney. The letter demanded that he and defendant "stay away" from Mrs. Sawczenko and invalidated any power of attorney defendant claimed to possess regarding her mother. The letter stated that Mrs. Sawczenko believed Mr. Kelly and defendant had entered her property without permission and taken property belonging to defendant's late brother. The letter also stated that the police were called, and defendant and Mr. Kelly were instructed not to

enter the residence again. The attorney demanded the return of all property taken from the residence.

¶ 27    Defendant filed a motion to dismiss the second-amended complaint. After two rounds of oral arguments, the trial court granted the motion on all counts and issued an oral ruling.

¶ 28    Regarding count one for recission, the trial court found that plaintiffs' complaint did not adequately allege that the parties could be restored to the status quo, or that there was no adequate remedy at law. The court also found the complaint unclear as to the misconduct underlying plaintiffs' recission claim. The complaint argued that recission was required because defendant "never accepted the beneficial interest in the land trust." The trial court noted, however, that acceptance of an interest in property "is presumed where the conveyance is beneficial to the grantee regardless of whether the grantee knows or accepts the interest." Thus, the court dismissed plaintiffs' recission claim.

¶ 29    The trial court found that count two, in which plaintiffs requested the imposition of a constructive trust, also was "based on an unidentified cause of action." The court noted that a constructive trust "arises only when there is another form of wrongdoing." The complaint did not sufficiently allege undue influence by defendant, or that defendant forced her mother to do something against her will when she drove her to the credit union to sign the latest amendment to the land trust. The court also noted that the complaint did not sufficiently allege wrongdoing by the notary. The trial court dismissed count two.

¶ 30    The trial court also dismissed count three in which plaintiffs sought a declaratory judgment. First, the court found that the claim did not plead sufficient facts showing an actual and legal controversy. Additionally, the court found a "lack of an adequate theory of wrongdoing against

[defendant]." The pleadings did not allege sufficient facts to support Mrs. Sawczenko's lack of mental capacity when she signed the amendment form.

¶ 31     As for count four, alleging tortious interference with inheritance expectancy, the trial court found that plaintiffs did not sufficiently allege facts showing some type of misrepresentation by defendant to Mrs. Sawczenko, as the tort required. The allegations left the following essential questions unanswered: How did defendant allegedly influence her mother? How was Mrs. Sawczenko's free will impaired? Instead, the complaint presented "conclusory attestations from neighbors that *** Jewdokia was afraid of her daughter. Those statements, while potentially troubling, don't speak of specific threats. They are not close in time. And the cases tell us to look at or around the time of the transaction." The trial court found that even if the signed amendment was somehow deficient, due to the two notary seals or the misspelled first name, "it doesn't necessarily go to undue influence." The trial court therefore dismissed this count.

¶ 32     The trial court expressed some reservation about whether plaintiffs would be "able to state a claim for anything." However, it gave plaintiffs one more opportunity by allowing them to file a motion for leave to file a third-amended complaint. The court ordered plaintiffs to address "the Loyola factors, showing why this one is going to work, and it's done timely, et cetera."

¶ 33     Plaintiffs filed their motion on June 20, 2024. The motion, which had the proposed third-amended complaint attached, stated that it was filed "pursuant to the Court's Order entered May 16, 2024." The motion requested leave to file the amended pleading and for any further relief the court deemed just and proper. Defendant filed a response, arguing that plaintiffs' motion did not address the *Loyola* factors. Therefore, they should be denied leave to file their third-amended complaint.

¶ 34    In their reply to defendant's response, plaintiffs argued that the amended pleading addressed the trial court's concerns. They attached a Power of Attorney for Health Care which showed Mrs. Sawczenko "was unable to meet her medical needs and needed a fiduciary to assist her." This power of attorney was allegedly executed "on the very same day as she purported to transfer to that same fiduciary, [defendant], all of her right, title and interest in her real estate *** which is a presumed fraud in Illinois." Plaintiffs argued that defendant was not prejudiced by the pleading where she was "readily able to answer the proposed amended complaint."

¶ 35    The trial court denied the motion after a hearing on December 13, 2024. In its written order, the court noted that the case "has been pending in the pleading stage since December 2021." The court found, as a threshold matter, that plaintiffs' third-amended complaint did not "adequately allege the theory of wrongdoing upon which the claims for recission, constructive trust, and declaratory judgment are based. This is not a new issue in the case." Although the court "had extensive colloquy with Plaintiffs' counsel about this very issue during argument on the motion to dismiss the SAC[,]" the theory of wrongdoing remained unclear. The court found that, "[f]or that reason alone, the proposed amendment does not cure prior defects in the pleading."

¶ 36    Even if the trial court could interpret the third-amended complaint as alleging presumptive or actual undue influence and lack of testamentary capacity, "based on sporadic references to those terms within the pleading," the court found that plaintiffs did not allege sufficient facts supporting those causes of action. The trial court further found that, as to the tortious interference with inheritance expectancy claim, plaintiffs failed to allege sufficient facts showing an intentional interference by defendant, or tortious conduct at the time Mrs. Sawczenko signed the last amendment.

¶ 37 Regarding timeliness and previous opportunities to amend, the trial court found that plaintiffs "filed their initial complaint more than three years ago. The Court allowed discrete discovery to give Plaintiffs a fair opportunity to investigate their claims and improve the quality of their factual allegations. Still, the case remains at the pleading stage more than three years after its inception." Plaintiffs "received multiple court rulings specifically identifying defects in their prior pleadings. This fourth attempt at pleading is not a material improvement over the prior pleadings." Given its findings, the trial court did not address prejudice.

¶ 38 Plaintiffs filed this appeal.

¶ 39                                    II. ANALYSIS

¶ 40 First, we address defendant's argument that we strike portions of plaintiffs' brief for violating Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). The rules concerning appellate briefs are not mere suggestions, and this court may strike a brief or dismiss an appeal for failure to follow those rules. *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10. Rule 341(h)(2) requires an appellant's brief to include "[a]n introductory paragraph stating (i) the nature of the action and of the judgment appealed from and whether the judgment is based upon the verdict of a jury, and (ii) whether any question is raised on the pleadings and, if so, the nature of the question." Rather than an introductory paragraph, plaintiffs' brief contains an "Introduction" that spans two pages. Moreover, the "Nature of the Case" is not merely part of the "Introduction." Instead, it is a separate section that also spans more than two pages. The length of these sections, and their argumentative nature, violate Rule 341(h)(2). See *Artisan Design Build, Inc. v. Bilstrom*, 397 Ill. App. 3d 317, 321 (2009) (finding that a two-page introductory statement containing argument violates Rule 341(h)(2)). Additionally, plaintiffs' statement of facts is argumentative and contains only sporadic citations to the record, in violation of Rule 341(h)(6) (requiring a statement

of facts "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal"). Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 41 However, striking an appellate brief, in whole or in part, is a harsh sanction ordinarily reserved for the most egregious failures that hinder our review. *Battle v. Chicago Police Department*, 2022 IL App (1st) 200083, ¶ 9. "[T]he rules are an admonishment to the parties and not a limitation upon the jurisdiction of this court." *Perona v. Volkswagen of America, Inc.*, 2014 IL App (1st) 130748, ¶ 21. Despite these violations, meaningful review is not completely precluded, as the merits of the case can be ascertained from the record and the trial court's thorough findings. While we decline to strike plaintiffs' brief, we will disregard portions that do not comply with the supreme court rules or are unsupported by citations to the record. Plaintiffs' counsel will be well-served by complying with the rules in the future.

¶ 42                                      A. *Discovery*

¶ 43 On appeal, plaintiffs first challenge the trial court's decision to bar "all discovery (except the basic information the Court directed [defendant] to provide," including the bar of "all discovery to any third party throughout the proceedings." Plaintiffs argue that the trial court's judgment improperly prevented them from fully presenting their case.

¶ 44 Defendant responds that we have no jurisdiction to consider this issue because plaintiffs did not identify the specific discovery judgment in their notice of appeal. The notice of appeal stated only that plaintiffs were appealing the trial court's May 16, 2024 order dismissing their second-amended complaint with prejudice, and the court's March 14, 2025 order denying them leave to file a third-amended complaint.

¶ 45 Rule 303 provides that the notice of appeal "shall specify the judgment or part thereof *** appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1,

2017). It is well-established that this court has jurisdiction only on matters raised in the notice of appeal. *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App. 3d 1028, 1034 (2001). However, an unspecified order or judgment is reviewable if it is a "step in the procedural progression" leading to a judgment specified in the notice of appeal. (Internal quotation marks omitted.) *McGath v. Price*, 342 Ill. App. 3d 19, 33 (2003).

¶ 46    The trial court granted defendant's motion to stay discovery on July 21, 2022, when it dismissed plaintiffs' original complaint. Plaintiffs later filed their amended complaints, and their second-amended complaint was dismissed with prejudice on May 16, 2024, which plaintiffs included in their notice of appeal. We find that the trial court's order staying discovery was a "step in the procedural progression" that concluded with the dismissal of plaintiffs' complaint with prejudice. See *Ruane v. Amore*, 287 Ill. App. 3d 465, 470 (1997) (finding that orders denying plaintiffs' motions to reopen discovery were a step in the procedural progression that culminated in the granting of summary judgment). It is therefore reviewable.

¶ 47    Although we have jurisdiction to review the trial court's discovery order, plaintiffs are not absolved from compliance with the supreme court rules regarding their claims on appeal. Rule 341(h)(7) (eff. Oct. 1, 2020) provides that arguments on appeal "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." A contention supported by some argument, but no authority, does not comply with Rule 341. *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1045 (2009).

¶ 48    Here, plaintiffs' discovery argument spans more than eight pages of their brief before citing any authority. The two cases plaintiffs cite at the end of their argument state general legal principles, and plaintiffs provide no analysis as to why those cases are specifically relevant to their case. Rule 341 requires both argument and citation to relevant authority. *Vancura v. Katris*, 238

- 14 -

Ill.2d 352, 370 (2010). "[A] reviewing court is not simply a depository into which a party may dump the burden of argument and research." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56. Moreover, given the lack of legal analysis citing pertinent authority, the legal points plaintiffs attempt to make are unclear. "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority." *Id.* Claims that fail to satisfy the requirements of Rule 341(h)(7) are forfeited. *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33.

¶ 49    Regardless of forfeiture, we find no error based on the record before us. Supreme Court Rule 201(b)(1) (eff. Mar. 17, 2023) allows a party to obtain by discovery full disclosure "regarding any matter relevant to the subject matter involved in the pending action." The trial court may deny a discovery request when it has sufficient information upon which to decide a defendant's motion to dismiss. *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 381 (2004). However, if it reasonably appears that discovery might assist the party resisting the motion to dismiss, a trial court should not deny a discovery request and dismiss the action. *Yuretich v. Sole*, 259 Ill. App. 3d 311, 317 (1994). The trial court's discovery order is reviewed for abuse of discretion. *Wisniewski v. Kownacki*, 221 Ill.2d 453, 457 (2006). An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005).

¶ 50    We note that although the trial court ordered a stay of discovery pending resolution of defendant's motion to dismiss, it did not preclude all discovery. In fact, it ordered that plaintiffs be provided with the latest land trust amendment, and defendant produced a power of attorney for health care prepared by her attorneys. This distinguishes our case from *Yuretich*, a case cited by

plaintiffs. In that case, the trial court allowed no discovery prior to granting the defendant's motion to dismiss. *Yuretich*, 259 Ill. App. 3d at 317.

¶ 51 Plaintiffs contend that the trial court should have allowed their discovery requests pertaining to defendant, as well as to Mrs. Sawczenko's caretakers and physicians, because they would have had personal knowledge of her physical and mental condition in the last year of her life and on the day she signed the latest land trust amendment. Plaintiffs appear to argue that Mrs. Sawczenko's advanced age and deteriorating physical condition rendered her susceptible to undue influence on the day she signed the amendment.

¶ 52 Importantly, the trial court allowed plaintiffs to depose Maliniak, someone who had no stake in the trust and who was familiar with Mrs. Sawczenko from previous encounters. Maliniak was the only person, other than defendant, who was present when Mrs. Sawczenko signed the latest trust amendment and could speak about her condition. Maliniak described Mrs. Sawczenko as an "old lady" who needed help with signing the document due to the plastic shield the bank used during COVID. However, according to Maliniak, Mrs. Sawczenko introduced defendant as her daughter, and she could tell from the look on Mrs. Sawczenko's face that she was glad to have defendant with her. It was Mrs. Sawczenko, not defendant, who spoke to Maliniak and asked her to notarize the document.

¶ 53 Plaintiffs also sought three years of defendant's financial records and her personal communications with Mrs. Sawczenko. Plaintiffs have not explained how these broad discovery requests would assist them in overcoming the pleading deficiencies in their complaint. Without that connection, allowing plaintiffs' discovery requests would amount to an impermissible "fishing expedition." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 927 (2007). The trial court's decision to stay plaintiffs' discovery requests pending resolution of defendant's motion to

dismiss was not an abuse of discretion. See *Evitts*, 359 Ill. App. 3d at 514 (finding that "[d]iscovery is not necessary where a cause of action has not been stated.")

¶ 54                    B. *Dismissal of Plaintiffs' Second-Amended Complaint*

¶ 55    Plaintiffs next contend that the trial court erred in dismissing their second-amended complaint. The trial court dismissed plaintiffs' complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)). A section 2–615 motion to dismiss attacks "the legal sufficiency of a complaint based on defects apparent on its face." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). When ruling on a section 2–615 motion to dismiss, a court may consider only the facts that are apparent from the face of the pleadings, matters of which the court can take judicial notice and judicial admissions in the record. *Id*. We accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Marshall v. Burger King Corp*., 222 Ill. 2d 422, 429 (2006). However, mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2–615 motion to dismiss. *Pooh-Bah Enterprises*, 232 Ill. 2d at 473. "[T]he requirement that a complaint set forth facts necessary for recovery under the theory asserted is not satisfied, in the absence of the necessary allegations, by the general policy favoring the liberal construction of pleadings." *Teter v. Clemens*, 112 Ill. 2d 252, 256–57 (1986). We review the trial court's dismissal of a complaint pursuant to section 2–615 *de novo*. *Id*.

¶ 56    Plaintiffs' complaint contained four counts: (1) recission of the September 3, 2021 land trust amendment; (2) imposition of a constructive trust upon the trust property; (3) request for a declaratory judgment that the latest amendment was invalid and the beneficial interest of the trust was vested in plaintiffs at the time of Mrs. Sawczenko's death; and (4) tortious interference with inheritance expectancy.

¶ 57    Rescission may be granted "where there has been *some fraud in the making of a contract*, such as an untrue statement or the concealment of a material fact, or where one party enters into a contract reasonably relying on the other party's innocent misrepresentation of a material fact." (Emphasis added.) *Illinois State Bar Association Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 165 (2004). A constructive trust may be imposed where there exists *actual or constructive fraud*, or when *duress, coercion or mistake* is present. *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 740 (1995) (Emphasis added.) Generally, "some form of wrongdoing is a prerequisite to the imposition of a constructive trust." *Id.* To recover for tortious interference with an economic expectancy, plaintiffs must establish: "(1) the existence of his expectancy; (2) defendant's intentional interference therewith; (3) *tortious conduct such as undue influence, fraud or duress*; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages." (Emphasis added.) *DeHart v. DeHart*, 2013 IL 114137, ¶ 39.

¶ 58    Plaintiffs' claims and their request for a declaratory judgment thus required them to allege facts supporting some type of wrongdoing by defendant. Such a finding requires, for example, a showing that the document was voidable due to some type of fraud, or that the party executed the document relying on an innocent misrepresentation of a material fact. *Illinois State Bar Association*, 355 Ill. App. 3d at 165.

¶ 59    Plaintiffs attempt to argue that the underlying wrongful act was defendant's alleged exertion of improper control over an "ill and elderly nonagenarian" in order to coerce Mrs. Sawczenko into changing the beneficiary designation of the land trust interest from plaintiffs to defendant. However, to survive a section 2-615 motion to dismiss, their complaint must allege *facts* to bring their claims within a legally recognizable cause of action. *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 429–30 (2006). In other words, plaintiffs must allege sufficient facts, rather

than mere conclusions, to support their contention that defendant exerted undue influence over Mrs. Sawczenko. *Patrick Engineering, Inc., v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 60    It is well-established that undue influence necessary to invalidate a will is that which prevents the testator from exercising her own free will in disposing of her estate. *Estate of Maher*, 237 Ill. App. 3d 1013, 1017 (1992). Such influence "must be of such a nature to destroy the testator's freedom concerning the disposition of [her] estate and render [her] will that of another." *In re Estate of Hoover*, 155 Ill.2d 402, 411 (1993). Moreover, the undue influence "must be directly connected with the execution of the instrument, operate at the time it was made, and be directed toward procuring the will in favor of a particular party or parties." *Maher*, 237 Ill. App. 3d at 1017.

¶ 61    Plaintiffs' complaint alleged that on September 3, 2021, approximately one month prior to Mrs. Sawczenko's death, she signed the latest land trust amendment granting the beneficial interest in the trust to defendant. That day, defendant had driven Mrs. Sawczenko to the bank, watched her sign the document, and then asked her to sign it again with her full first name. Plaintiffs attempted to establish that defendant coerced Mrs. Sawczenko into signing the latest amendment by alleging that, for at least two decades prior to February 2021, Mrs. Sawczenko did not have a good relationship with defendant, and she had been afraid of defendant. Plaintiffs also alleged that shortly before her death in October of 2021, Mrs. Sawczenko "was gravely ill and effectively bedridden and incapable of understanding documents in the English language."

¶ 62    These allegations did not address defendant's relationship with Mrs. Sawczenko at the time the amendment was signed. Plaintiffs alleged that *prior to February 2021*, defendant and Mrs. Sawczenko did not have a good relationship. Patricia's affidavit, Mr. Smith's affidavit, and the June 2020 letter merely confirmed the strained relationship in 2020. The latest amendment, however, was executed on September 3, 2021. Likewise, plaintiffs alleged that Mrs. Sawczenko

was incapacitated by her illness shortly before her death in October 2021. As support, they point to Mr. Smith's statement that he had seen Mrs. Sawczenko on September 11 or 12 in 2021, and she did not recognize him. However, Mrs. Sawczenko had signed the amendment on September 3, 2021, in the presence of Maliniak. Plaintiffs' allegations do not speak to Mrs. Sawczenko's health on the day she signed the amendment. As a result, these allegations are insufficient to show that defendant exercised undue influence at the time Mrs. Sawczenko signed the latest amendment, a required element of this cause of action. See *DeHart v. DeHart*, 2013 IL 114137, ¶ 28 (finding that misrepresentations made shortly before execution of the will, along with other factual allegations, was sufficient to state a cause of action for undue influence).

¶ 63    Plaintiffs argue that undue influence may be presumed, "even in the absence of a fiduciary relationship," where a person procures an interest in property from one "who is infirm due to age or illness," citing *Swenson v. Wintercorn*, 92 Ill. App. 2d 88 (1968). However, our supreme court has made clear that the debilitated-testator presumption of undue influence, as set forth in *Swenson*, is not recognized under Illinois law. See *In re Estate of Coffman*, 2023 IL 128867, ¶ 85.

¶ 64    Even if plaintiffs had sufficiently pled the existence of a fiduciary relationship, for undue influence to be presumed, they must still specifically allege the manner in which defendant overcame Mrs. Sawczenko's free will at the time the amendment was executed. *In re Estate of Baumgarten*, 2012 IL App (1st) 112155, ¶ 22. Plaintiffs contend throughout their brief that defendant's dominance over Mrs. Sawczenko was evident where defendant drove Mrs. Sawczenko to the bank when she was weak with cancer, asked her to sign the document twice, and then wrote the date on the document. However, the mere fact that Mrs. Sawczenko was in poor health, and that defendant drove her to the bank and instructed her to sign the document, did not necessarily indicate that defendant had overcome Mrs. Sawczenko's free will at the time. Otherwise, any

situation where a son or daughter assisted an elderly and sick parent would meet this requirement. See *Id*. ¶¶ 25-26 (finding that the fact that a wife provided transportation, prepared meals, and cared for her ailing husband was insufficient to demonstrate that she was in a dominant role).

¶ 65    As such, plaintiffs' second-amended complaint failed to sufficiently allege facts showing undue influence exerted by defendant when Mrs. Sawczenko signed the latest land trust amendment. Accordingly, they have not pled facts that bring their claims within legally recognized causes of action. Moreover, while the trial court dismissed the second-amended complaint with prejudice, the court allowed plaintiffs to file a motion for leave to file a third-amended complaint. They have had multiple opportunities to craft their pleadings. Therefore, we find that dismissal of plaintiffs' second-amended complaint pursuant to section 2-615 was appropriate. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003).

¶ 66            C. *Denial of Leave to File a Third-Amended Complaint*

¶ 67    Plaintiffs' final contention is that the trial court erred in denying them leave to file a third-amended complaint. In determining whether to grant leave to amend, courts consider "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). Whether to allow an amended complaint is a matter within the trial court's discretion, and a reviewing court will not overturn the trial court's decision absent an abuse of discretion. *Hachem v. Chicago Title Insurance Co*., 2015 IL App (1st) 143188, ¶ 16.

¶ 68    In the proceedings below, the trial court allowed plaintiffs to file a motion for leave to amend, and it specifically instructed them to address the *Loyola* factors. Plaintiffs' motion did not

do so. On appeal, plaintiffs again provide no argument or analysis based on the *Loyola* factors. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 69     Forfeiture aside, the trial court did address the *Loyola* factors before denying plaintiffs leave to file a third-amended complaint. In its written order, the court found, as a threshold matter, that plaintiffs' third-amended complaint again did not "adequately allege the theory of wrongdoing upon which the claims for recission, constructive trust, and declaratory judgment are based. This is not a new issue in the case." The court found that, "[f]or that reason alone, the proposed amendment does not cure prior defects in the pleading." The trial court further found that plaintiffs failed to allege sufficient facts showing an intentional interference by defendant, or tortious conduct at the time Mrs. Sawczenko signed the last amendment. The court noted that the case "has been pending in the pleading stage since December 2021."

¶ 70     Regarding timeliness and previous opportunities to amend, the trial court found that plaintiffs "filed their initial complaint more than three years ago. The Court allowed discrete discovery to give Plaintiffs a fair opportunity to investigate their claims and improve the quality of their factual allegations. Still, the case remains at the pleading stage more than three years after its inception." Plaintiffs "received multiple court rulings specifically identifying defects in their prior pleadings. This fourth attempt at pleading is not a material improvement over the prior pleadings." The trial court's decision to deny plaintiffs' leave to file a third-amended complaint was not arbitrary, fanciful, or unreasonable such that no reasonable person would adopt the court's view. Therefore, we find no abuse of discretion.

¶ 71                                        III. CONCLUSION

¶ 72     For the foregoing reasons, the judgment of the circuit court is affirmed

¶ 73    Affirmed.